The action was instituted by plaintiff, who had been an agent of the New Jersey Mutual Life Insurance Company, against John C. Drewry, a general agent of the company, to recover fees and commissions to the amount, in the aggregate, of $1,416.20, alleged to be due from defendant to plaintiff by reason of a special contract between them, an oral contract whereby, as plaintiff claimed, defendant personally was to pay plaintiff certain renewal commissions for and during the life of the defendant, etc.; this claim being in addition to and in excess of fees and commissions due according to the written contracts of the parties.
Defendant denied that he had made any binding agreement to pay the commissions, as claimed, but contended that his only obligation was in the written contracts made with the approval of the company, whereby plaintiff's right to commissions on renewals was (668) restricted to nine years, and that defendant had paid plaintiff any and all amounts that were due him on the contracts existent between them. *Page 740 
A jury trial was formally waived by the parties and the questions at issue were submitted to the court under agreement in part as follows:
"It is stipulated and agreed by the parties in the above entitled cause that a trial by jury of all questions or issues of fact is hereby waived with the assent of the court, and that the presiding judge shall try all issues or questions of fact arising in said cause, and that his findings thereon shall have the same force and effect as the verdict of a jury, and he shall find and report all conclusions of law applicable to his findings of fact therein, and the same shall be embodied in his judgment."
That, pursuant to said agreement, his Honor heard the evidence and made disposition of the questions of law and fact involved in the controversy and embodied the same in his judgment, as follows:
This cause coming on to be heard at the January term of the Superior Court, and a jury trial being waived, and it being agreed, by consent of all parties hereto, that the court shall find the facts in the case as well as applying the law, and the cause being heard, the court finds the following facts:
1. That H. F. Adickes rendered the service alleged from April, 1901, to 1 January, 1907, but that said services were not rendered under a Quantummeruit or oral agreement, but were rendered under a written agreement between John C. Drewry and H. F. Adickes, which was approved by the Mutual Benefit Life Insurance Company, the common employer for whom each worked.
2. That the written agreement dated 10 April, 1901, did not embrace the entire contract, but the terms of the supplemental agreement (which was redrawn two or three times), as appears from the evidence, were finally agreed upon between the parties and approved 26 May, 1902.
3. That there was a new contract drawn between the parties under date of 10 August, 1903, by which the drawing allowance of H. F. Adickes was increased from $100 to $125, and the additional 1 per cent on the nine renewal commissions allowed to H. F. Adickes; that this agreement was submitted to Col. Le-Gage Pratt, superintendent of agencies of the Mutual Benefit Life Insurance Company, and approved by him.
4. That a new contract was drawn and entered into between the parties, dated 1 July, 1905, whereby the drawing amount was increased from $125 to $150 and the additional 1 per cent allowed 10 August, 1903, was canceled, and the contract dated 10 April, 1901, was expressly canceled.
5. That H. F. Adickes terminated his agreement with John C. Drewry as of 1 January, 1907, and a full settlement was arranged between them by E. W. Wiles.
(669) 6. That the letter dated 25 March, 1903, was not a contract nor an affirmance of any previous oral contract, but, as the court construes *Page 741 
it, was a letter written by J. C. Drewry to H. F. Adickes in explanation of the contract. It limits itself by the following language: "You understand, and I so stated to you, that I could not guarantee to you, or hold out to you any inducements in the way of renewals, which are not guaranteed to me under my contract with the company. I would not undertake to offer any inducements further than those which are given me under my own contract with the company itself." The court finds that this letter was never submitted to or approved by the Mutual Benefit Life Insurance Company.
7. That the contract of John C. Drewry with the Mutual Benefit Life Insurance Company limited his renewals to nine renewal commissions, which were guaranteed to him.
8. That the contract of J. C. Drewry then provided for the company allowing a collecting fee of 4 per cent, which has since been reduced to 2 per cent, which was to defray the expenses of carrying on the State agency, and out of which he had to pay postage and clerk hire in the State agency. Further, the contract provided that the collecting fee might be modified or terminated on the company giving thirty days notice.
9. That H. F. Adickes rendered the services he did under distinct written agreements, and not under a quantum meruit or any oral agreement between H. F. Adickes and J. C. Drewry.
10. That in May, 1911, more than three years after the contracts between the parties had terminated, as shown by the receipt of 4 August, 1908, there were negotiations between H. F. Adickes and J. C. Drewry at Raleigh, and by letters between them, in which Drewry called attention to the fact that Adickes' renewal interest was then at its highest, and would begin to decrease very materially in the course of a year or two. In the letter of 29 June, 1911, Drewry used this language to Adickes: "While I think, as I stated to you, that your renewal interest will amount to $2,500 this year, it will not amount to so much the year following, because your renewal interest will begin to diminish very materially now in the course of a year or two. A part of your renewal business terminated last year, but that was only on the Virginia business and the small amount of business written in 1901, the first year we returned to North Carolina. After next year your renewal interest on all business written in 1902 will terminate and in the course of three or four years your renewal interest will be considerably less than now. Besides, we do not know what emergency may arise to terminate a large volume of the business; so for these reasons you will notice I have changed the wording of the notes you sent me." That in the letter of 29 June, 1911, was inclosed two promissory notes, one for (670) $2,000, due January, 1912, and the other for $2,500, due 1 September, *Page 742 
1912, both of which H. F. Adickes accepted and discounted at the Wachovia Banking and Trust Company, which notes were paid by J. C. Drewry according to their tenor.
11. That H. F. Adickes did not assert any claim under the letter of 25 March, 1903, until after the receipt and discounting of the two notes of J. C. Drewry, of $2,000 and $2,500, each for a period of about eight years, and he did not offer to return the notes which he had received on the basis of that settlement.
12. That the rules of the Mutual Benefit Life Insurance Company, the common employer of J. C. Drewry and H. F. Adickes, provided that all agreements between agents respecting the company's business should be submitted to and approved by the company before they should be binding.
The court has given this case very careful consideration, and it has been a rather perplexing case for the court to deal with, and the court is of the opinion that Mr. Adickes is and has been sincere in his contentions, but the court, from all the evidence in the case, and the exhibits filed, cannot bring its mind to the conclusion that Drewry entered into or intended to enter into an oral agreement with Mr. Adickes to give him 1 per cent on all renewals as long as claimed by Mr. Adickes; and hence the court finds as a fact that Mr. Adickes performed the services, which he did perform, under written contracts as heretofore referred to, and that no oral contract was entered into between Drewry and Adickes, as claimed by Adickes.
CONCLUSIONS OF LAW.
1. That the services rendered by H. F. Adickes were not under a quantummeruit, nor oral contract, but where under the written contract of 10 April, 1901, as modified by supplements thereto and new agreements in writing, such as were made in accordance with the rules of the company.
2. That the agreement of 10 August, 1903, allowing the additional 1 per cent on the nine renewals and increasing the drawing allowance from $100 to $125 per month, superseded the provision as to the compensation in the agreement of 10 April, 1901, and in supplement thereto, so far as they might conflict.
3. That the agreement dated 1 July, 1905, annulling the extra 1 per cent, and especially canceling the agreement dated 10 April, 1901, annulled all previous agreements and settled all differences between the parties, and was in accord and satisfaction of the same.
4. That the letter of 25 March, 1903, was an explanation of and dependent upon the agreement dated 10 April, 1901, which was approved (671) 21 April, 1901, and the cancellation of the original agreement by the making of new contracts dated 10 August, 1903, and *Page 743 
1 July, 1905, which canceled by name the contract of 10 April, 1901, canceled any supplement thereto, though the same might not be called by name.
It is therefore considered, adjudged, ordered, and decreed by the court that the plaintiff is not entitled to recover anything in this action, and the defendant's motion to nonsuit, made at the close of all the evidence, is allowed, and this action is dismissed; and the defendant will recover of the plaintiffs the cost of this action to be taxed by the clerk.
 JAMES L. WEBB, Judge Presiding.
To the foregoing judgment the plaintiff excepts and appeals to the Supreme Court. Notice of appeal waived. Appeal bond fixed at $50.
WEBB, J.
There is evidence to support his Honor's findings of fact, which makes them as binding as a verdict of the jury thereon. Stokes v. Cogdell,153 N.C. 181; Branton v. O'Briant, 93 N.C. 99. His conclusions of law are correctly made, and we see no reason for disturbing the judgment which has been rendered in the case.
It is chiefly urged for error that defendant is estopped from resisting plaintiff's claims for indefinite renewals by reason of a letter, dated 25 March, 1903, of defendant to plaintiff, introduced in evidence and appearing on page 45 of the record, as follows:
"In further explanation of our contract of 10 April, 1901, I wish to state that it is my purpose to allow your renewal interest of 1 per cent, as stated in the contract, to continue as long as the policies remain in force and I remain with the Mutual Benefit. Of course, you understand that at my death my contract with the company would terminate and my renewal interest would only continue for the period of years as stated in my contract with the company, and your interest in renewals would have to terminate necessarily, in the same manner and at the same time as my contract with the company. You understand, and I so stated to you, that I could not guarantee to you or hold out to you any inducements in the way of renewals which are not guaranteed to me under my contract with the company. I would not undertake to offer any inducements in the way of renewals which are not guaranteed to me under my contract with the company. I would not undertake to offer any inducements further than those which are given me under my contract with the company itself." The position being, as we understand it, that this letter contains written acknowledgment of plaintiff's claim for indefinite *Page 744 
renewals, and that it is not permissible for defendant to maintain (672) the contrary by parol evidence. But we do not concur in this view. Even if the letter were in terms conclusive, it is not and does not purport to be the contract between the parties on which plaintiff sues, and which was entered into, if at all, two years before. It is only a statement of defendant's then recollection of the contract; in writing, it is true, but in no sense contractual within the meaning of the principle which forbids the introduction of parol evidence in contradiction of written agreements. But the letter itself is not conclusive in its terms, for, while in the first part of it there seems to be an admission of plaintiff's claim for renewals to the death of defendant or while he remains with the company, there is the restriction that defendant could not guarantee to plaintiff or hold out to him any inducements in the way of renewals which are not guaranteed to defendant under his contract with the company; that defendant could not undertake to offer any inducements further than those given defendant under his contract with the company itself, etc. It was proved that defendant's commissions on renewals were limited to the nine years, so that, even if the letter was intended to be contractual in character, it is so far ambiguous that parol evidence would have to be resorted to in order to arrive at its true significance.
Having given the facts in evidence our most careful consideration, we are of opinion that the controversy has been properly disposed of on its merits and the judgment in defendant's favor should be affirmed.
Affirmed.
Cited: McGeorge v. Nicola, 173 N.C. 709 (1c).