SECURITY NATIONAL BANK OF GREENSBORO AS ADMINISTRATOR c.t.a. OF THE ESTATE OF LOOMIS McA. GOODWIN, AND AS ADMINIS-TRATOR c.t.a. OF THE ESTATE OF HANNAH B. GOODWIN; ADE-LAIDE GOODWIN LIPSCOMB, AND ANDREW W. GOODWIN v. THE EDUCATORS MUTUAL LIFE INSURANCE COMPANY.

(Filed 23 July, 1965.)

**1. Insurance § 2—**

While the statutes prescribe qualifications and require the licensing of insurance agents, G.S. 58-40, G.S. 58-41, an agent's right to commissions is not prescribed by statute but depends upon the contract between the agent and the insurer, which contract must be interpreted in accordance with the intent of the parties under the rules of construction applicable to contracts generally.

**2. Same— Under the terms of agreement, insurer was liable for commissions on renewal premiums after death of the agent.**

The agency contract in this case provided for cancellation by either party upon thirty days' notice and cancellation without notice for specified causes, with a following provision that upon termination of the contract under the prior provisions, insurer should have the option to purchase the agent's right to renewal commissions in accordance with a stipulated formula, and then provided in an independent paragraph that if the insurer did not exercise the purchase option the agent should be entitled to receive commissions on renewal premiums so long as the renewal premiums were paid by insureds. *Held:* The contract does not provide an option to insurer to purchase the agent's right to commissions upon termination of the contract by the death of the agent, and the agent's personal representative is entitled to recover commissions on all renewal premiums thereafter paid on policies that had been sold by the agent, and another provision of the contract that the company should pay the agent compensation during the continuance of the agreement does not alter this result, such provision being read in context with the specific provisions for payment of commissions on renewal premiums after the termination of the contract.

BANK *v.* INSURANCE CO.

**3. Contracts § 12—**

A contract must be construed as a whole, and a paragraph or excerpt must be interpreted in context with the rest of the agreement.

**4. Insurance § 2; Fiduciaries—**

The relationship of debtor and creditor exists between an insurance agent and insurer in regard to commissions due the agent, and ordinarily the contract between them creates no trust relationship expressly or by necessary implication.

**5. Trusts § 14—**

A constructive trust does not arise where there is no fiduciary relationship and there is an adequate remedy at law, and mere silence of the debtor and failure to disclose the facts to the person entitled to collect the obligation, or even the debtor's request of secrecy to a third person, does not constitute fraud as the basis of a constructive trust when the facts are equally available to the person entitled to collect the obligation.

**6. Same; Insurance § 2—**

An insurance agent's personal representative had possession of the contract between the agent and the insurer providing for the payment of commissions on renewal premiums. *Held:* The purposeful and deliberate failure of insurer to disclose the facts in regard to the receipt of renewal premiums does not create a constructive trust in regard to the personal representative's right to collect the commissions on renewal premiums.

**7. Seals—**

Two or more persons may adopt the same seal, and where only one seal appears on the contract between two parties, even when one of the parties is a corporation, whether both intended to adopt the seal is a question of fact, while whether the instrument is a sealed instrument is for the court.

**8. Corporations § 21—**

As a general rule a corporation may use or adopt any seal, and if it adopts a seal different from the corporate seal for special occasions or if it has no corporate seal, the seal adopted is the corporate seal for the time and the occasion. G.S. 55-17(3).

**9. Limitation of Actions § 17—**

The burden is upon plaintiff upon defendant's plea of the applicable statute of limitations to prove that the action was commenced within the time limited, including the burden of proving that defendant adopted the seal affixed to the instrument, or other facts and circumstances, when relied on by plaintiff to repel the three-year statute pleaded, and when neither the referee nor the court finds the crucial facts in regard thereto, the cause must be remanded.

**10. Appeal and Error § 55—**

Where the conclusions of law are not supported by findings of the crucial facts, the cause must be remanded.

**11. Reference § 9—**

    Where the Supreme Court remands a cause for necessary findings of fact, the Superior Court may make its own findings or may recommit the cause to the referee for further hearing and findings.

APPEAL by plaintiffs and defendant from *McKinnon, J.,* December 1964 "A" Civil Session of WAKE.

*Adams, Kleemeier, Hagan & Hannah and Allen Langston for plaintiffs.*
*Lassiter, Leager, Walker & Banks for defendant.*

MOORE, J. This is a civil action for recovery of insurance agent's commissions on renewal premiums paid on insurance policies — the commissions are allegedly due and owing by defendant to the estate of Loomis McA. Goodwin, deceased.

Educators Mutual Life Insurance Company (Company), a foreign corporation with its principal office at Lancaster, Pennsylvania, was at all times mentioned herein licensed to do business in North Carolina and maintained an office in Raleigh. Loomis McA. Goodwin (Agent) was a licensed general insurance agent, G.S. 58-39.4(c). Said Company and Agent on 16 May 1950 entered into a contract under which Agent engaged to procure on behalf of Company policies of health, accident and hospitalization insurance in North Carolina. A substantial volume of business was written, particularly group insurance covering members of the North Carolina Bar Association and insurance covering employees of the Olivia Raney Library. With the consent and approval of Company several sub-agents were appointed to assist Agent with the business, and they shared in Agent's commissions. Agent was allowed a commission on the initial premium and a smaller commission on each renewal premium. Policy-holders paid premiums directly to Company's North Carolina office. Commissions were sent monthly to Agent and sub-agents, as per their agreements for division of the commissions. Agent died 2 March 1953. Thereafter, sub-agents' shares of the commissions were sent to them, but no further commissions were sent to Agent or his personal representative.

On 3 December 1958 this action was instituted by the administrator, c. t. a., of Agent's estate and the persons entitled to the assets of the estate to recover the commissions which had accrued after Agent's death and which were retained by Company. The complaint alleges that plaintiffs are entitled to recover commissions on renewal premiums in the sum of $22,381.25 with interest from 5 June 1956, and, for a second cause of action, that Company holds the commissions in trust for

plaintiffs. Defendant, answering, denies that it is obligated to pay such commissions in any amount, denies any trust relationship, and pleads the 3-year statute of limitations, G.S. 1-52.

A compulsory reference was ordered. The referee heard and considered evidence and stipulations of the parties, and filed his report on 4 May 1964. He decided that plaintiffs are entitled to judgment for $18,106.25 with interest from 5 December 1956. Defendant filed exceptions.

In superior court trial by jury was waived. The judge considered the exceptions, affirmed referee's findings of fact, made conclusions of law, and entered judgment in favor of plaintiffs in the sum of $5,-359.54 with interest at the legal rate from 5 December 1956. All parties filed exceptions and appeal.

We do not deem it necessary or desirable to encumber the Reports with a complete summary of the pleadings, full recital of the evidence and stipulations, tedious review of the proceedings had, recital of referee's findings of fact, listings of the many exceptions to the referee's report and to the judgment, and statement of all of the judge's conclusions of law. Such of these matters as are essential to an understanding and solution of the ultimate questions raised by the appeals will be set out in the discussions of these questions.

We now consider the legal questions in dispute.

(1). Did Agent's right to commissions on renewal premiums survive his death so as to entitle his personal representative to an accounting for such commissions on renewal premiums collected by the Company after Agent's death?

The contract between Company and Agent was not terminated in any manner prior to the latter's death. Before an insurance agent may engage in the business of "writing" insurance, he must meet certain qualifications, G.S. 58-41, obtain a license from the Insurance Commissioner, G.S. 58-40; and assume certain obligations and responsibilities imposed for the protection of the public. His license to do business is a valuable property right, but the duties and obligations which exist between such agent and the company he represents are not specifically fixed by statute. It is a well established general rule that the right of an insurance agent to commissions on renewal premium depends upon the terms of the contract between the agent and the insurance company, having in view the intent of the parties, the rules of construction applicable in arriving at that intent, and the evidential circumstances under which the right to such compensation is claimed or denied, as such contract constitutes the guide for ascertaining, determining and measuring the rights, duties and obligations of the parties. *Wood v.*

*Insurance Co.*, 206 N.C. 70, 72, 173 S.E. 34; 163 A.L.R. 1470; 136 A.L.R. 160; 79 A.L.R. 475.

The pertinent parts of the subject contract are:

"1. DUTIES: . . . Company hereby appoints said Agent its agent for the purpose of soliciting, procuring, and transmitting to Company applications for its Commercial Division Health, Accident and Hospitalization Insurance policies, delivering policies, collecting and paying to Company the premiums on insurance so effected, and performing such other duties as may be required by the Company."

"4. COMPENSATION: Company will allow Agent, during the continuance of this agreement, and agent will accept as full compensation for all services performed and expenses incurred in work hereunder, the following commissions (subject to the provisions of . . . 9 hereof) upon premiums received by Agent on business written by him . . .:"

(A schedule of commissions on initial premiums and on renewal premiums is set out.)

"9. COMPANY — RESERVED RIGHTS: Company reserves the right to withdraw authority from Agent to write any classifications of risks or policy forms at any time without previous notice and to amend the commission rates specified in . . . 4 hereof, with respect to new policies issued, and renewals . . . received (whether before or after termination of this contract) after such amendment/s"

"12. TERMINATION: PURCHASE: CONTINUING COMMISSIONS: RECORDS:

"A. This contract may be cancelled by either party, without assignment of cause, upon thirty days' prior written notice to the other; and in case of Agent's incapacity, insolvency, fraud, breach of contract provisions, or inability to retain necessary license from governmental authorities, or in case the Company should deem it advisable, because of unfavorable legislation or other reasons, to withdraw its business from the territory . . ., this contract may be cancelled by Company at any time thereafter, without previous notice. . . ."

"B. Upon termination of this contract under any of the provisions of the foregoing . . . paragraph, Company should have the option, exercisable by notice given to Agent at any time within 60 days after termination to purchase all of Agent's

rights in and to Company business (including expiration and other records, goodwill, rights to renewal commissions, and any other items in which Agent may be considered to have any property or interest) and Agent shall sell and transfer the same to Company for a price equal to the commissions specified in . . . 4 hereof on the entire renewal premium income received by the Company from Agent's business so purchased, during each month for a period of eighteen consecutive months immediately following the month of termination, payable at the end of each month. . . ."

"If Company shall not exercise the foregoing purchase option, Agent shall be entitled to receive from Company the same amount of renewal commissions as specified in . . . 4 hereof (subject to any reduction under the provisions of . . . 9 hereof which may be made applicable to all of the Company's other Agents of the same type and class as Agent under this contract) less a service charge equal to 10% of renewals received by Company after termination on policies previously written by Agent, so long as said policies continue to be renewed and so long as renewal premiums paid by Insured therefor aggregate Five Hundred ($500.00) Dollars per calendar year . . ."

"C. Upon termination of this contract under any of the provisions of this (contract) . . . Agent shall immediately return to Company all policy forms and other blanks, supplies and property which have been furnished by Company for transaction of business hereunder."

It is our opinion, and we so hold, that under the terms of the contract Agent's estate was entitled to commissions on renewal premiums collected by the Company after the death of Agent. The third paragraph of section 12 of the contract — the paragraph not designated by a letter — determines the right to these commissions. It is clear that said paragraph is independent of paragraphs A, B and C of section 12 and fixes the rights of Agent to commissions, after termination of the contract, in all situations to which paragraph B is not applied. The form in which section 12 is cast in the original contract and in the original record on appeal is significant. The third paragraph of section 12 is not indented as are paragraphs A. B and C, *i.e..* its left margin is well to the left of the left margins of paragraphs A, B and C — thus it is set apart and is not dependent upon paragraphs A, B and C. The heading of section 12 contains four titles, one for each paragraph, and the title for the third paragraph is, significantly, "CONTINUING COMMISSIONS." Under paragraph B, if Agent voluntarily cancels the con-

tract or if the Company cancels without assignment of cause or for any of the causes set out in paragraph A, the Company has the option to require Agent to sell and transfer his commissions on renewal premiums to the Company upon the terms stated in paragraph B. This option does not, of course, exist in a situation where the contract terminates by death of the agent. There is good reason for the existence of such option in cases of voluntary cancellations by Agent or the Company. Upon termination of the contract of a living agent, such agent will most likely continue in the insurance business and represent a competing company. It is therefore important that there be a definite and enforceable plan for a speedy settlement between Agent and Company. No such reason exists when a contract is terminated by death. Therefore, the contract does not provide an option for purchase in case of termination by death. Such option does not apply in the present case. Therefore we may disregard the clause at the beginning of the first sentence in the third paragraph of section 12, to wit: "If Company shall not exercise the foregoing option." After eliminating this clause as inapplicable to Loomis McA. Goodwin, the said third paragraph reads (eliminating matters not essential to the decision of the question involved) as follows: "Agent (Loomis McA. Goodwin) shall be entitled to receive from Company the same amount of renewal commissions as specified in (section) . . . 4 hereof . . . less a service charge . . . after termination on policies previously written by Agent, so long as said policies continue to be renewed. . . ." (According to a specific declaration in the naming clause the word "Agent" when used in the contract refers to Loomis McA. Goodwin.) Thus, the estate of Goodwin was entitled to receive the commissions after termination of his contract by death. The "service charge" is, of course, to compensate the Company for loss of the services of Agent after termination. It will be noted that the declaration of the right of Agent to receive commissions after termination is not limited to any particular mode of termination. And there is no provision that an agent whose contract is terminated by death shall not have that right.

Our interpretation of the contract, based on the third paragraph of section 12, is consistent with all other provisions of the contract. In paragraph B of section 12 the Company's option is "to purchase all of Agent's rights . . . (including . . . rights to renewal commissions. . . .)" No such expressions as "if any" or "which he may have" are used in connection with renewal commissions — the existence of such "rights" is acknowledged and recognized. Furthermore, the "price" for all of Agent's rights purchased, including "goodwill" and other properties, is payment of *commissions* to Agent for 18 months, if the option is exercised. We also call attention to section 9 of the contract in

which the Company is given the right to change the rate of commissions from time to time. The Company is given the right "to amend commission rates . . . with respect to new policies issued, and renewals . . . received (whether before or after termination of this contract)." Here again the right to renewal commissions "after termination of the contract" is recognized.

In contending that Goodwin had no right to renewal premiums after his death terminated the contract, defendant Company relies on the provisions of section 4, entitled "COMPENSATION," and particularly the italicized words in the following sentence: "Company will allow Agent, *during the continuance of this agreement,* and Agent will accept as full compensation for all services performed . . . the following commissions. . . ." If section 4 is considered alone and without regard to other provisions of the contract, it is susceptible of the construction urged by defendant, and it would seem that commissions are payable only during "the continuance" of the contract. But when considered together with the other provisions of the contract discussed above, the fallacy of defendant's interpretation and the meaning of the provision become clear. "During the continuance of the agreement" compensation for all services shall be as specified in section 4, but after termination of the agreement compensation shall be as specified in the third paragraph of section 12 or, if the right of option to purchase exists and is exercised, compensation shall be as specified in paragraph B of section 12. "The contract must be construed as a whole, and a paragraph or excerpt must be interpreted in context with the rest of the agreement." 1 Strong: N. C. Index, Contracts, § 12, p. 585; *Stanley v. Cox,* 253 N.C. 620, 117 S.E. 2d 826; *Robbins v. Trading Post,* 253 N.C. 474, 117 S.E. 2d 438.

Section 3 of the contract, not copied above, provides that the relationship between Company and Agent shall be construed as that of principal and independent contractor. The construction which defendant Company places on the contract, with respect to Agent's compensation, is more consistent with employer-employee relationship; the principal-independent contractor relationship is in keeping with our interpretation. We note that Company, after the death of Agent, continued to pay renewal commissions to the sub-agents.

The construction we place on the contract in this case and the rules applied in construing same do not conflict with the principles stated in *Adickes v. Drewry,* 171 N.C. 667, 89 S.E. 23; *Ballard v. Insurance Company,* 119 N.C. 187, 25 S.E. 956; *Insurance Co. v. Williams,* 91 N.C. 69.

(2). Does the Company hold the commissions on renewal premiums collected since the death of Agent in trust for Agent's estate?

Plaintiffs urge that we adopt the holding of the Oklahoma Court in *General American Life Insurance Co. v. Roach,* 65 P. 2d 548, in a somewhat similar situation that the Company "stood in a trust capacity" toward the agent, or, failing this, that we declare that a constructive trust arose by reason of the Company's fraudulent intent to withhold the fund and its failure to disclose facts which it was its duty to reveal.

Company's obligation to plaintiffs arose by virtue of its contract with Agent. A contract to pay renewal commissions creates a debtor-creditor relationship. *Wood v. Insurance Co., supra.* The contract contains no provisions which create a trust relationship, expressly or by necessary implication, running in favor of Agent as *cestui que trust.*

Mr. O. E. Stubblefield, State manager for the Company during the life of the contract and for a period of time after Agent's death, testified that he reported Agent's death to the Company and requested authority to make settlement for renewal commissions with Agent's estate, there were several discussions and after some delay the president of the Company finally gave him verbal instructions with respect to the matter. Stubblefield's testimony on this point is: ". . . president . . . called me and told me that the matter had been discussed further among the people at the home office and suggested that I not contact any of the Goodwin heirs. In fact, just don't be around them or let them see me . . . to stay away from the Goodwins. . . . He told me (it had been) decided not to pay . . . his estate anything unless they made a noise, and if they did we would pay them a little something to satisfy them."

Plaintiffs' evidence tends to show that the contract was in possession of Agent's personal representative during the administration of Agent's estate. Defendant offered evidence tending to contradict Mr. Stubblefield's testimony in part. The referee found as a fact that the Company concealed information from plaintiffs and such information was not within the knowledge of plaintiffs. Referee concluded that the Company held the commissions in trust for plaintiffs. The judge, however, concluded that no trust arose.

". . . a constructive trust ordinarily arises out of the existence of fraud, actual or presumptive — usually involving the violation of a confidential or fiduciary relation — in view of which equity transfers the beneficial title to some person other than the holder of the legal title." *Bowen v. Darden,* 241 N.C. 11, 84 S.E. 2d 289. "The mere failure to perform an agreement or to carry out a promise, or the failure to pay a debt, cannot in itself give rise to a constructive trust, since such a breach does not in itself constitute fraud or abuse of confidence, or duty requisite to the existence of a constructive trust; but a breach of

agreement or promise may in connection with other circumstances give rise to such a trust." 54 Am. Jur., Trusts, § 221, p. 171. A constructive trust does not arise where there is no fiduciary relationship and there is an adequate remedy at law. *Atkinson v. Atkinson,* 225 N.C. 120, 33 S.E. 2d 666. "It is generally held that mere silence does not constitute fraud where it relates to particular facts and matters of such nature as to be equally open to common observation or visible to the eye, or such facts are discernible by the exercise of ordinary diligence, or where the means of information are as accessible to one party as to another. . . . a debtor (is not) bound to disclose to the creditor or his personal representative the fact of the indebtedness. . . . A request of secrecy to a third person, who sustains to the transaction the mere relation of a witness, does not constitute actionable fraud, at least where no application appears to have been made to the witness to disclose the facts of the transaction, and no misrepresentation appears to have been made to the party in relation to them." 23 Am. Jur., Fraud and Deceit, § 84, p. 863.

No constructive trust arises upon the facts and circumstances here presented. There was no fiduciary relationship; the relation was that of debtor and creditor. The contract, which created the debt, was in the hands of deceased Agent's personal representative. Plaintiffs knew at all times the nature of Agent's business. There was no misrepresentation. The evidence shows nothing more than mere silence on the part of the Company, albeit the Company purposely and deliberately remained silent. As debtor, it was under no obligation to disclose the fact of the indebtedness to Agent's personal representative. Plaintiffs had an adequate remedy at law.

(3). Is plaintiffs' cause of action barred by the 3-year statute of limitations, G.S. 1-52, except for commissions on renewal premiums paid the Company during the three years next preceding the institution of this action?

Agent died 2 March 1953; this action was instituted 3 December 1958. From the last sentence (not copied hereinabove) of the third paragraph of section 12 of the contract, it appears that Company was to make payment of commissions monthly. Defendant contends a cause of action accrued as to each monthly payment upon failure of the Company to make payment at the end of the month. *Peal v. Martin,* 207 N.C. 106, 176 S.E. 2d 282. Defendant further contends that a cause of action accrued to plaintiffs at the end of each month after the death of Agent, each monthly payment was barred three years after it was due and payable, and only such amount due plaintiffs as has accrued within the three years immediately preceding the institu-

tion of the action is recoverable. G.S. 1-52; *Jennings v. Morehead City,* 226 N.C. 606, 39 S.E. 2d 610; *Robertson v. Pickerell,* 77 N.C. 302.

However, both the referee and the judge concluded as a matter of law that "The contract between Goodwin and defendant was under seal." The 10-year statute of limitations applies in an action "upon a sealed instrument against the principal thereto." G.S. 1-47(2). Both the Company and the Agent are principals with respect to the subject contract.

For reasons which hereafter become apparent, we refrain from setting out herein the evidence bearing upon the question whether the contract was under seal as to the Company and the Agent, other than the execution clause of the contract, which is:

> "In witness whereof, the parties hereto have executed the agreement on the aforesaid date.

> 

> EDUCATORS MUTUAL INSURANCE COMPANY

> By J. Laurence Strickler,

> President.

> and A. A. Slater

> Director of Agencies

> Loomis McA. Goodwin          (SEAL)

> Agent

> 

> Witness

>    O. E. Stubblefield."

So far as the record before us discloses the only seal appearing on the contract is that opposite the name of Loomis McA. Goodwin. ". . . our Court has held that a seal appearing upon an instrument, opposite the name of the maker, in the place where the seal belongs, will in the absence of proof that the maker intended otherwise, be valid as a seal." *McGowan v. Beach,* 242 N.C. 73, 86 S.E. 2d 763; *Allsbrook v. Walston,* 212 N.C. 225, 193 S.E. 151; *Bank v. Jonas,* 212 N.C. 394, 193 S.E. 265. The law permits two or more obligors to adopt one seal, and it will be the specialty (sealed instrument) of all of them. *Yarborough v. Monday,* 14 N.C. 420; *Pickens v. Rymer,* 90 N.C. 282. The burden is on the plaintiff to prove that the action accrued within the time limited by the statute, and that defendant adopted the seal. *Sprinkle v. Sprinkle,* 159 N.C. 81, 74 S.E. 739; *Pickens v. Rymer, supra.* Whether the defendant adopted the seal is a question for the jury. *Yarborough v. Monday, supra.*

In *Rusling v. Union Pipe & Const. Co.,* 39 N.Y.S. 216, affd. 53 N.E. 1131, corporate defendant and individual plaintiff executed a contract

in the same manner as in the instant case, except there it was recited that parties "have hereunto set their hands and seals." The court said: ". . . where several parties execute a paper, reciting that it is executed under their seals, it is sufficiently sealed if one seal is affixed, because all parties may adopt the same seal as their own. *Van Alstyne v. Van Slyck,* 10 Barb. 383. This rule applies although one of the parties to the deed be a corporation. A corporation, like an individual, may adopt any seal that is convenient for the particular occasion. The only limitation of the rule is that the seal adopted must be affixed as the seal of the corporation."

Purdon's Pennsylvanian Statutes Annotated, Title 15, section 2852-302, provides: "Subject to the limitations and restrictions contained in this act or in its articles, every business corporation shall have power: . . . (3) to have a corporate seal, which may be altered at pleasure, and to use the same by causing it or a facsimile thereof to be impressed or affixed, or in any manner reproduced." North Carolina has a statute to the same effect. G.S. 55-17(3). As a general rule, a corporation may use or adopt any seal. If a corporation adopts a seal different from its corporate seal for a special occasion, or if it has no corporate seal, the seal adopted is the corporate seal for the time and the occasion. It has been said that a corporate seal may consist of anything found upon a paper and which appears to have been put there by due authority or to have been adopted and used by such authority as and for the seal of the corporation. Whether an instrument is sealed is for the court; but whether the seal affixed is the defendant's seal is for the jury. 18 Am. Jur., 2d, Corporations, 689-691.

The burden is upon plaintiffs to prove that the action accrued within the time limited by the applicable statute, by showing that the Company adopted the seal appearing on the contract for the special occasion or for all similar occasions, or that such seal became the seal of the corporation by reason of some other rule of law, or that the regular corporate seal was impressed or attached to the original of the contract, or that there are facts and circumstances which exclude the operation of the 3-year statute, G.S. 1-52, other than the matter of a seal. With respect to these matters, neither the referee nor the judge found facts which support the conclusions that the contract was a sealed instrument and that the 3-year statute of limitations does not apply. It is therefore necessary that the cause be remanded for findings of fact on this particular phase of the case. *Jamison v. Charlotte,* 239 N.C.423, 79 S.E. 2d 797; *McMillan v. Robeson,* 225 N.C. 754, 36 S.E. 2d 235.

The superior court upon remand may make its own findings of fact and conclusions of law, as to the appropriate statute of limitations, or may recommit the cause to the referee for further hearing, findings,

conclusions and decision, on this phase of the case.

· When the appropriate statute of limitations has been determined, recovery shall be in accordance with the terms and provisions of the third paragraph of section 12 of the contract and subject to the statute of limitations if it bars any part of the recovery.

Plaintiffs shall pay one-half the costs of this appeal, and defendant shall pay one-half.

Error and remanded.