**H. M. SMITH, Plaintiff,**

v.

**The TRAVELERS INDEMNITY COM-
PANY, Defendant.**

No. C–102–G–70.

United States District Court,
M. D. North Carolina,
Greensboro Division.

May 31, 1972.

J. Archie Cannon, Jr., Greensboro, N.
C., for plaintiff.

McNeill Smith and Larry B. Sitton,
Greensboro, N. C., for defendant.

## MEMORANDUM ORDER

EUGENE A. GORDON, Chief Judge.

This matter came on for hearing before the Honorable Edwin M. Stanley, late Chief Judge for the Middle District of North Carolina, on the defendant's motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Judge Stanley heard the oral arguments of the parties on December 2, 1971, but his untimely death occurred before he issued a ruling on the motion. The attorneys for both sides have stipulated that the Court can rule on the pending motion for summary judgment from the record and the transcript of the oral arguments without the necessity for another hearing.

The action was brought before this Court on the question of the defendant's liability to the plaintiff under Lawyer's Professional Liability Insurance Policy No. LB 2937892 which the defendant issued to Harold E. Wood, Jr., formerly a Richmond, Virginia, attorney. While this policy was in full force and effect, the plaintiff was introduced to Wood at the plaintiff's place of business in North Carolina. At this time the plaintiff

turned over to Wood $15,000.00 for Wood to invest for the plaintiff. The plaintiff received in return a six-month demand note for the same amount.

Wood made only two interest payments to the plaintiff and then failed to make further payments. The plaintiff brought suit in the State of Virginia on June 3, 1969, against Wood and Travelers Indemnity Company, Wood's insurer, and the defendant in this action, to recover the $15,000.00.

Even though the defendant's policy stated that the company would "defend any suit against the insured alleging such act or omission and seeking damages which are payable under the terms of this policy, even if any of the allegations of the suit are groundless, false or fraudulent. . . .," the defendant did not appear in the Virginia action to defend Wood. The defendant had notified Wood by letter dated May 28, 1969, that the company was taking the position that the transaction between Wood and the plaintiff was not covered under the policy. Wood did not answer the complaint and a default judgment was entered against him on July 25, 1969.

The defendant-Travelers Indemnity Company, however, did answer the plaintiff's complaint in its own behalf, admitting that it had issued the policy to Wood but denying any liability under the policy. After the default was entered against Wood, the plaintiff filed a motion for summary judgment against the defendant-Travelers, but the motion was denied on January 12, 1970. On February 13, 1970, the plaintiff took a voluntary nonsuit against the defendant-Travelers and on May 18, 1970, the plaintiff instituted the instant action asking this Court to order the defendant-Travelers to pay the default entered against Wood.

### Discussion

It is the contention of the plaintiff that this Court should enforce the Virginia default judgment as a matter of law on the grounds that where an insurer with notice fails to appear and defend a suit against its insured, all conditions and reservations in the policy are waived and the insurer is estopped to raise any further defenses. The defendant, however, argues that it has never had its day in court to establish whether the transaction was covered by the policy. Accordingly, the first issue before this Court is whether or not the plaintiff is entitled to have the Virginia default judgment enforced against the defendant without further consideration of the facts and law surrounding the default judgment.

The plaintiff cites a number of cases which he claims support his contention that the defendant is liable on the default judgment for failing to defend Wood. However, a close examination of these cases reveals that they are either factually distinguishable from the instant situation or actually support the defendant's contention that the insurer need not defend the insured when the action is clearly outside the coverage of the insurance policy.

In Fentress v. Rutledge, 140 Va. 685, 125 S.E. 668 (1924), the insurer did not defend its insured and a judgment was entered against the insured. The insured then sued to have the insurer pay the judgment. The insurer defended on the grounds that it was not given adequate notice of the suit, and the court stated the issue to be, "[d]oes the evidence before the trial court show a defense on the part of the garnishee company [the insurer] sufficient to relieve it from the payment of the judgment?" Fentress v. Rutledge, *supra* at 690, 125 S.E. at 670. The court then considered the question and determined that the notice was adequate and that the insurer was liable for the judgment against the insured.

Another case cited by the plaintiff, London Guarantee & Accident Co. v. C. B. White & Bros., Inc., 188 Va. 195, 49 S.E.2d 254 (1948), also involves the failure of the insurer to defend a suit brought against the insured, but the court stated at 255, 49 S.E.2d at 255: "We agree that the insurance policy cast upon the defendant [the insurer] the duty to defend, initially at least, only if

the suit against its insured stated a case covered by the policy. So we have held and so it seems to be generally held." The court then reviewed the incident giving rise to the suit and determined that the incident was within the coverage of the policy and held that the insurer was liable and should have defended the suit.

A North Carolina case relied on by the plaintiff, Nixon v. Liberty Mutual Insurance Co., 255 N.C. 106, 120 S.E.2d 430 (1961), also allowed the insured to recover from the insurer for failing to defend a suit brought against the insured, but the court prefaced its decision with the following statement:

> "The first and most obvious of the positive obligations created by an insurer's *unjustified* refusal to defend is its obligation to pay the amount of the judgment rendered against the insured or of any reasonable compromise or settlement made in good faith by the insured of the action brought against him by the injured party." (Emphasis added) Nixon v. Liberty Mutual Insurance Co., *supra* at 434.

In that case the insurer was contending that the policy was not in force at the time of the accident, and the court held that if it were determined that the policy was in effect at the time of the accident, then the failure to defend was unjustified.

The case of St. Paul Fire and Marine Insurance Co. v. Icard, 196 So.2d 219 (Fla.App.1967), is cited by the plaintiff as being "on all fours" with the instant action and holds that the insurer is liable for a failure to defend. In that case a Florida attorney was sued for malpractice by an irate domestic relations client. The femme-plaintiff's complaint in the malpractice action was prepared by herself and not signed by an attorney and the court noted that the complaint was full of unsupported accusations and innuendoes and obviously the product of a "bitter and vituperative bent of mind." The insurer refused to defend the suit and the insured had to employ counsel at his own expense and was suc-

cessful in having the case dismissed. He then sued his insurer for the expenses he suffered in defending the suit claiming that the insurer was bound by its policy to defend him. The insurer claimed that the suit brought by the client alleged dishonesty on the party of the insured and therefore, the suit was not covered by the policy because of the exclusionary clause excepting coverage to dishonest, fraudulent, criminal or malicious acts or omissions.

The Florida court found the insurer liable for the damages and held that the insurer's reliance on the conjectural conclusions of the complaint was not justified or warranted, particularly when the complaint was not signed by an attorney. The defendant in the instant action claims there is a factual difference in the St. Paul case and the instant case in that the decision of the insurer not to defend in the St. Paul case was based solely on a reading of the complaint, but in the instant action the insurer conducted an investigation into the matter and then determined that the action was not within the policy limits.

In reading the cases cited by the plaintiff, the Court is impressed by the fact that the courts of both Virginia and North Carolina have held that the failure to defend must be unjustified before the insurer will be held liable, but even more impressive is the fact that in all of the cases cited there was no liability on the part of the insurer until the court determined that the action was within the coverage of the policy and that the insurer should have defended the action initially.

This conclusion, that the defendant should be given an opportunity to argue the question of coverage under the policy, is directly supported by the case of Farm Bureau Mut. Automobile Ins. Co. v. Hammer, 177 F.2d 793 (4th Cir. 1949), cert. denied sub nom. Beverage v. Farm Bureau Mutual Automobile Ins. Co., 339 U.S. 914, 70 S.Ct. 575, 94 L.Ed. 1339 (1949). In that case the insured had been convicted of second degree murder after intentionally driving his truck into an automobile occupied by

five persons. After his conviction, two of the injured passengers and the personal representatives of the three deceased passengers brought civil actions in the Virginia courts against the insured and obtained verdicts that the deaths and injuries were accidental and judgments were entered against the insured. The insurer did not defend the insured in the civil actions and after the judgments were rendered against the insured, the insurer sought declaratory relief in the federal district court that the policy did not cover the intentional acts of the insured.

In granting the motion of the defendants for summary judgment and dismissing the insurer's complaint, the district court held that by failing to defend, the insurer was bound by the findings in the civil action that the injuries and deaths were the result of negligence of the insured and not intentional. On appeal this reasoning was rejected and the decision reversed.

The Fourth Circuit Court of Appeals, in a lengthy decision, stated that the purpose of requiring the insurer to defend suits brought against its insured is to prevent the expense and delay that would accompany two trials, but the Court stated:

"[T]hat the binding effect of a judgment against the insured does not extend to matters outside the scope of the insurance contract, and that the Insurance Company is neither obligated to defend nor bound by the findings of the court if the claim against the insured is not covered by the policy." Farm Bureau Mut. Automobile Ins. Co. v. Hammer, *supra* at 799.

The Court also quoted with approval from a Massachusetts case, Klefbeck v. Dous, 302 Mass. 383, 19 N.E.2d 308 (1939), where the Massachusetts court said the insurer could investigate the claim to determine whether or not it was within the coverage of the policy, and if the company was convinced that the claim was not within the policy coverage, then it could disclaim liability and withdraw from the suit.

The Court concluded that the insurer is entitled to its day in court to show, if it can, that the policy did not cover the injurious acts which the insured committed. Accordingly, this Court rejects the plaintiff's argument that a finding of liability against the defendant insurer should be entered solely on the grounds that the plaintiff has a default judgment against its insured. Under the dictates of the *Farm Bureau* case, this Court must first determine that the transaction between Wood and the plaintiff is within the coverage of the policy before finding liability on the part of the defendant for the failure to defend.

The defendant, in his motion for summary judgment, presents three reasons that the transaction between Wood and the plaintiff is not within the coverage of the policy. The defendant contends (1) that the coverage of the Lawyer's Professional Liability Policy extends only to damages resulting from professional services in the insured's capacity as a lawyer and that Wood was not acting in any legal capacity when he took the $15,000.00 from the plaintiff; (2) that Wood's refusal to sign a statement made to the insurer's investigator and his refusal to answer questions during the taking of his deposition amounted to a breach of the cooperation clause of the policy and is a complete defense to the plaintiff's action; and (3) that Wood's transactions with the plaintiff are not within the coverage of the policy because the defendant is not liable for any dishonest, fraudulent, criminal or malicious act or omission of the insured.

In considering the defendant's first contention, the policy that was issued to Wood is commonly known as a malpractice policy, and it states that coverage exists only for damages "arising out of the performance of professional services for others in the insured's capacity as a lawyer." The defendant contends that receiving money for the purposes of investment without any attendant legal obligations is not within the definition of practicing law.

By statute in North Carolina, the practice of law is defined as "performing any legal service for any other person, firm or corporation, with or without compensation, . . . or assisting by advice, counsel, or otherwise in any such legal work; and to advise or give opinion upon the legal rights of any person, firm or corporation." N.C.Gen. Stat. § 84–2.1. In Virginia the practice of law is defined as "whenever he [the attorney] furnishes to another advice or service under circumstances which imply his possession and use of legal knowledge or skill." Rules of Court, 205 Va. 1011 (1965). It is doubtful that the taking of money for the purpose of investment can be construed in either state as the performance of legal services but since neither state has dealt with a situation similar to the one facing this Court, the case law of other jurisdictions must be considered to help the Court determine whether or not Wood was acting in his legal capacity when he accepted the $15,000.00 from the plaintiff.

Certainly, it is sometimes difficult to draw a line between the practice of law and non-legal services since the field of law encompasses such a large area, and the attorney is called upon to use his legal background in many situations. A case that is helpful in deciding where to draw this nebulous line is Ellenstein v. Herman Body Company, 23 N.J. 348, 129 A.2d 268 (1957). In that case the plaintiff, an attorney, contracted with the defendant to conduct labor negotiations with the defendant's employees. The negotiations were conducted and the plaintiff brought suit for the balance payable under the contract. The only defense raised by the defendant is that an attorney-client relationship existed and the court should exercise its judicial superintendence over such relationships and determine whether the contract was fair. The court determined that the attorney-client relationship did not exist because the attorney was engaged as a business entrepreneur and not as a lawyer. The New Jersey Supreme Court said the controlling test should be whether the attorney was engaged for his legal services or for work which is not inherently the practice of law, and if it is the latter, it is non-legal services even if his knowledge of the law came into play during the transaction.

Applying this test to the instant case, it does not appear that the plaintiff employed Wood for the purposes of obtaining any legal assistance. In fact from the plaintiff's own testimony it is clear that Wood,. through a mutual acquaintance, approached the plaintiff at the plaintiff's place of business and suggested to the plaintiff that he could invest the plaintiff's money for him. This is certainly not the usual method employed for entering into an attorney-client relationship.

In trying to determine what type of relationship the parties had in mind when they entered into the agreement, the plaintiff testified that the reason he gave the money to Wood was because, ". . . I just figure a lawyer might just know a little bit more about the inside of doing things like that," but he also admitted, ". . . I have seen a lot of people do investment." (Deposition of H. M. Smith, January 20, 1970, at 16) The plaintiff further testified that he did not employ Wood for advice on any legal principles nor did he ask Wood to prepare any legal papers or to represent the plaintiff before any court or judicial body.

Wood's deposition also reveals that he did not consider the relationship to be that of attorney-client. In his deposition taken on July 22, 1969, in connection with the civil action brought against him in Virginia, he stated that he did not feel that the transaction was in any way related to his practice of law. (Deposition of Harold E. Wood, July 22, 1969, at 4.)

Finally, the case of Rouse v. Pollard, et al., 130 N.J.Eq. 204, 21 A.2d 801 (1941), is important because of its similarity to the case before this Court. In that case the plaintiff gave money to a member of a law firm for investment at

the attorney's suggestion. In seeking a judgment for the return of the money, the plaintiff contended that each member of the law firm should be held liable because the transaction was within the scope of the firm's practice. The court held otherwise and noted that it has long been the practice of attorneys to advise certain clients that their money could be invested in certain areas, particularly the mortgage and bond field, and in some cases even assist the client in carrying out the transaction, but the court also stated:

> "[W]e do not understand, that it is a characteristic function of the practice of law to accept clients' money for deposit and future investment in unspecified securities at the discretion of the attorney, and we find to the contrary. It is possible that attorneys in isolated instances have done this; just as it is possible that a person of any profession or occupation has done so. It has not, however, been done by lawyers, in this jurisdiction at least, with such frequency or appropriateness as to become a phase of the practice." Rouse v. Pollard, et al., *supra* at 804.

In examining the authorities relied on by the plaintiff, the Court finds them to be of little help in deciding the real relationship that existed between the plaintiff and Wood. The plaintiff first points to a Virginia statute, Code of Virginia, 1950, section 54–46, which states in pertinent part:

> "If any attorney received money for his client and fail to pay the same on demand, it may be recovered from him by warrant, or by suit, or motion, according to the amount, and damages in lieu of interest, not exceeding fifteen per centum per annum until paid, may be awarded against him."

The plaintiff further directs the Court's attention to the case of Glenn v. Haynes, 192 Va. 574, 66 S.E.2d 509 (1951), which applied the above cited Virginia statute. The distinguishing factor of both the *Glenn* case and the statute is that in both the relationship of attorney and client had already been established. In the *Glenn* case the attorney had been employed by the plaintiff to serve as the executor of her husband's estate and also to represent and advise her. Subsequently the plaintiff directed the defendant to collect certain jewelry belonging to her but in the hands of the plaintiff's sister. While the jewelry was in the attorney's possession, it was stolen and the plaintiff brought suit against the attorney to recover the value of the jewelry. The attorney-client relationship was not at issue and the court said the plaintiff had established a prima facie case as a bailee and the case should not have been dismissed in the lower court.

After a careful review of all the relevant and admissible facts before the Court and after a careful study of the numerous authorities cited by the plaintiff and the defendant, the Court concludes that Wood was not acting in any legal capacity when he accepted the $15,000.00 from the plaintiff. The Court is particularly impressed by the fact that the plaintiff did not seek out Wood, but rather Wood, a Virginia attorney, came to North Carolina and suggested to the plaintiff that he be allowed to invest the plaintiff's money. The Court is further influenced by the testimony of Wood and the plaintiff as to how they viewed the nature of the transaction. Finally, the transaction itself is one that requires no legal skill or training and indeed, is done every day by thousands of individuals who are without legal training but who are probably better qualified in the investment field than most attorneys.

Having decided that the transaction was not one that Wood carried out in his professional capacity and therefore not within the coverage of the policy, the defendant's other two contentions as to why the defendant is not liable to the plaintiff need not be considered.

Accordingly, the defendant, by the terms of its contract with Wood, was justified in refusing to defend Wood and is not liable on the judgment the plaintiff obtained against Wood, and the defendant's motion for summary judgment is hereby granted.

It is so ordered.