The majority opinion poses the issue thusly: "[W]hether there is a scintilla of evidence that Mrs. Watkins' loss arose out of the performance of professional services by Marcus in his capacity as a lawyer." Except for its emphasis on the scintilla rule, the issue presented is correctly stated. (The application of the scintilla rule is misplaced here because the undisputed facts do not lend themselves to alternative inferences from which more than one factual conclusion *Page 664 
could be drawn.[1] The "genuine issue of material fact" element is missing.) By clear, unambiguous language, the terms of the errors and omissions policy restricts St. Paul's liability coverage to "the performance of professional services . . . in the Insured's capacity as a lawyer."
It is not an overly simplistic restatement of the issue to ask: Under these undisputed facts, did Ms. Watkins' loss result from Marcus's misconduct arising out of a lawyer/client relationship? Or, did Marcus default on a personal obligation? Answering the former question "yes," by its application of the scintilla rule in a summary judgment context, the majority holds that the fact finder could infer from the undisputed evidence that, because the lawyer/client relationship existed at the time of the damage claim settlement, Ms. Watkins' subsequent loss arose out of Marcus's professional services in his capacity as a lawyer.
It is faulty reasoning, it seems to me, to say that, because Ms. Watkins' acquaintance with Marcus, her trust in him, and her decision, ultimately, to lend him money, all have their origin in the lawyer/client relationship formerly existing between them, then Marcus's default on the promissory note can be construed as professional misconduct committed in his capacity as a lawyer.
Indeed, Marcus took advantage of his client's personal trust in him in borrowing her money for his personal use. But this stretches the "but for" rule to impermissible limits. "[D]amages arising out of personal services . . . in the Insured's capacity as a lawyer" is a legitimate restriction of coverage; and these facts lend themselves to but one legal conclusion: Marcus received a personal loan from Ms. Watkins. He was acting personally and individually in borrowing the money and in defaulting in his obligation for repayment.
In my view, the fundamental error of the majority opinion lies in its reliance on Marcus's testimony in his second deposition as creating a scintilla of evidence on the lawyer/client relationship issue. Marcus's altered testimony to the effect that he had malpractice insurance coverage to protect Ms. Watkins in the event of his breach of trust and that the relationship did not become one of "borrower-lender" does not constitute evidence of fact, but merely unwarranted conclusions of law. Marcus could not testify, by way of conclusion, to this relationship arising out of undisputed facts. The legal conclusion to be drawn from these facts is a question of law for the court. The facts out of which his liability arose constitute a lawyer/client relationship as a matter of law or they do not. There is nothing to submit to a jury on this factual issue. This is not to say, of course, that, under other circumstances, questions of fact as to the nature of such relationship may not arise; but, here, to review this case as invoking the scintilla rule in the context of a summary judgment, in my opinion, is erroneous.
Our research, with able assistance of counsel, has disclosed several cases in point, each of which is consistent with the views expressed in the instant dissent. Typical of the language of those cases is the following from Rouse v. Pollard,130 N.J. Eq. 204, 21 A.2d 801 (1941):
 ". . . [W]e do not understand that it is a characteristic function of the practice of law to accept clients' money for deposit and future investment in unspecified securities at the discretion of the attorney, and we find to the contrary." at 804.
See, also, Ellenstein v. Herman Body Company, 23 N.J. 348,129 A.2d 268 (1957); Smith v. Travelers Indemnity Company,343 F. Supp. 605 (M.D.N.C. 1972); and Strauss v. New AmsterdamCasualty Company, 30 Misc.2d 345, 216 N.Y.S.2d 861 (1961). For the legal definition of "practice of law" in Alabama, see §34-3-6, Code 1975.
It should be obvious to the reader that the problem with this case lies in its deeper *Page 665 
dimension: The plight of Ms. Watkins if her legal remedy against St. Paul fails. The organized Bar has no Client's Security Fund. Her chances of recovery against a disbarred lawyer would be nil. Her only wrong consists in her confidence in a lawyer who had represented her in various matters over a period of years and who had recently effected a substantial recovery of damages for the wrongful death of her husband. I realize, with keen sensitivity, that to affirm the trial Court would have the apparent effect of leaving the scales terribly unbalanced. But hard facts make bad law; and the rule of law is poorly served when we permit the proverbial blindfolded mistress, in whose hand we entrust the scales of justice, to peep.
EMBRY, J., concurs.
[1] For an excellent in-depth discussion of this topic, see Hoffman, Alabama's Scintilla Rule, 28 Ala.L.Rev. 592 (1977).