IN RE: STANLEY A. GERTZMAN, ATTORNEY AT LAW

No. 9326SC898

(Filed 2 August 1994)

**Attorneys at Law § 48 (NCI4th)— funds given to attorney to invest—no attorney-client relationship—no reimbursement from Client Security Fund**

Where appellants gave deceased attorney funds to invest in a corporation and the attorney failed to do so, appellants were not entitled to reimbursement from the Client Security Fund of the North Carolina State Bar, since they were "investors" in a debtor-creditor relationship with the attorney and not "clients" in a fiduciary relationship customary to the practice of law.

**Am Jur 2d, Attorneys at Law §§ 197-216.**

Appeal by claimants from order entered 19 March 1993 by Judge Robert M. Burroughs in Mecklenburg County Superior Court. Heard in the Court of Appeals 22 April 1994.

*Daniel J. Clifton; and David R. Caudle, for claimant appellants.*

*R. David Henderson for claimant appellee.*

COZORT, Judge.

Claimants petitioned the superior court seeking to obtain a portion of the funds held by a trustee/conservator appointed to protect the interest of the clients of an attorney who had committed suicide. Claimants had loaned money to the attorney to invest in a corporation. The trial court denied the claimants' request, holding that claimants were "investors" in a debtor-creditor relationship with the attorney, and not "clients" in a fiduciary relationship customary to the practice of law. We affirm.

Stanley A. Gertzman, attorney at law, was a sole practitioner in Charlotte, North Carolina. Prior to October 1991, the North Carolina State Bar received information that Mr. Gertzman had misappropriated client funds. When an investigation revealed that Mr. Gertzman had misappropriated client funds, the State Bar obtained an order restraining Mr. Gertzman from handling client trust funds and preserving over $27,000.00 of client trust funds which were in Mr. Gertzman's trust account. On 17 October 1991, Mr. Gertzman committed suicide in his office.

## IN RE GERTZMAN

[115 N.C. App. 634 (1994)]

On 18 October 1991 the State Bar petitioned the Superior Court of Mecklenburg County for the appointment of a trustee/conservator pursuant to N.C. Gen. Stat. § 84-28(j) (1985) and Article IX, Rule 22 of the Rules and Regulations of the North Carolina State Bar to "inventory all client files, audit all fiduciary accounts, and generally take such actions as are necessary to protect the interests of the clients of Stanley A. Gertzman." On 21 October 1991, the court appointed W. Donald Carroll, Jr., as trustee/conservator of the practice of Mr. Gertzman.

The trustee's review of Mr. Gertzman's trust account records indicated that client funds were used by Mr. Gertzman to purchase two life insurance policies on his life and that the proceeds of these policies were to be paid, upon his death, to his wife, Mrs. Jeri P. Gertzman. On 22 April 1992, the trustee/conservator obtained from the superior court an order authorizing him to bring suit "against any identified party or parties to recover funds or assets which may in any manner be traced to the wrongful use of client trust funds by Stanley A. Gertzman." That same day, the trustee/conservator sued Mrs. Gertzman to impose constructive trust on the proceeds of the life insurance policies, which totaled $500,000.00.

By consent order dated 30 July 1992, the trustee and Mrs. Gertzman stipulated to, and the court approved, a settlement of the action which provided that the trustee/conservator have and recover approximately $400,000.00 of the proceeds of the policies.

Throughout 1992 and early 1993, the Client Security Fund of the North Carolina State Bar received numerous claims concerning Mr. Gertzman. The Client Security Fund (CSF) is a standing committee of the State Bar Council, established by the Council pursuant to an Order of the Supreme Court of North Carolina dated 29 August 1984, as amended. Its purpose is to reimburse, subject to certain limitations, clients who have suffered financial loss as the result of dishonest conduct of lawyers engaged in the private practice of law in North Carolina. Amended and Restated Rules of Administration and Governance North Carolina Bar Client Security Fund, p. 1 (hereinafter CSF Rules).

The responsibility of operating the Fund rests with a five member board. CSF Rules at 3-4. When the CSF receives a claim, it conducts an investigation and then places the claim on the agenda of the next Board meeting. CSF Rules at 7. If the Board approves payment to a claimant, the State Bar is subrogated to the rights of the claimant to

**IN RE GERTZMAN**

[115 N.C. App. 634 (1994)]

the extent of any reimbursement by the Fund plus expenses. CSF Rules at 10-11.

Appellants are twenty-two claimants who filed claims with the CSF alleging that Mr. Gertzman defrauded them of $600,000.00 by advising them that he was the attorney for Primary Physicians Care, Inc. (PPC), which had entrusted him to secure capital in order to franchise PPC on a national level and establish a medical insurance program. Appellants also alleged that Mr. Gertzman falsely advised them that he was empowered with the authority to issue and personally sign notes for PPC. Of the twenty-two appellants, eighteen had no relationship with Mr. Gertzman other than lending money to him or PPC. The remaining four had an attorney-client relationship with Mr. Gertzman either at or prior to the time the money was borrowed. However, neither of these four nor the other twenty-two appellants had an attorney-client relationship with Mr. Gertzman in connection with their loaning money to or investing funds with PPC.

On 23 October 1992, the CSF rejected appellants' claims because they "were one of investment rather than embezzlement, and no attorney/client relationship existed."

By Motion to Approve Accounting, Disbursement and Other Relief dated 26 January 1993, the trustee/conservator, among other things, recommended that all funds held by him be paid to the CSF in partial reimbursement of: (1) fees and expenses incurred in obtaining the life insurance proceeds, and (2) the amount of misappropriated trust funds which the CSF had reimbursed to Mr. Gertzman's clients. Superior Court Judge Robert M. Burroughs set a hearing for 19 March 1993 and directed the trustee/conservator to send notice of the hearing to all possible claimants. Pursuant to the notice of hearing, persons wishing to file a claim or object to the trustee/conservator's recommendation were required to file a claim at least five days prior to the hearing. On 11 March 1993, appellants filed a Claim, Objection to Trustee/Conservator's Recommendation of Disbursement, Petition for Declaratory Judgment and Motion for Intervention. On 12 March 1993 the State Bar filed a motion requesting an order requiring the trustee/conservator to disburse the remaining trust funds to the CSF.

At the 19 March 1993 hearing, the court reviewed all claims and heard arguments of counsel for all claimants, including appellants. At the conclusion, the court ordered the trustee/conservator to transfer the funds held by him to the CSF in reimbursement of the fees and costs incurred in obtaining life insurance proceeds and in partial

reimbursement for the amount of misappropriated trust funds the Board had paid Mr. Gertzman's clients. The court denied appellants' claims, holding appellants were investor creditors whose claims were previously rejected by the CSF and which did not arise out of an attorney-client relationship and thus "were not in the class of beneficiaries for whom the trustee/conservator has protected and preserved the trust estate." The court stated that "[t]heir remedy lies against the Estate of Mr. Gertzman as creditors not here . . . ." From this order, claimants appeal.

Appellants raise three issues on appeal: (1) whether the trial court erred in denying appellant's motion for intervention, (2) whether the court erred in ordering the Gertzman trust funds held by the trustee/conservator to be transferred to the CSF, and (3) whether the trial court erred in denying appellant's petition for declaratory judgment. We affirm.

Because the first two issues overlap, we consider them together.

Pursuant to Rule 24(a)(2) of the North Carolina Rules of Civil Procedure, a party can intervene in an action upon timely application when he "claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." N.C. Gen. Stat. § 1A-1, Rule 24(a)(2) (1990). There are three prerequisites to intervention as of right: "(1) an interest relating to the property or transaction; (2) practical impairment of the protection of that interest; and (3) inadequate representation of that interest by existing parties." *Ellis v. Ellis*, 38 N.C. App. 81, 83, 247 S.E.2d 274, 276 (1978). Because we find that appellants did not have an interest in the funds held by the trustee/conservator, we hold that the trial court properly denied appellants' motion for intervention. We also find that the trial court did not err in ordering the Gertzman trust funds held by the trustee/conservator to be transferred to the CSF.

Appellants contend that they have an interest in the insurance proceeds held by the trustee/conservator and that the trial court erred in ordering the Gertzman trust funds to be transferred to the CSF because: (1) appellants had valid claims pursuant to the North Carolina State Bar Client Security Fund Definition of "Dishonest conduct" as the result of a fiduciary relationship between Mr. Gertzman and the claimant appellants customary to the practice of law; and (2)

a constructive trust should be applied to the funds held by the conservator/trustee of Mr. Gertzman's law practice. We find that appellants did not have valid claims under the CSF Rules and that appellants were not entitled to a constructive trust.

Rule 1.7 of the CSF allows reimbursement for losses resulting from "the Dishonest Conduct of an Attorney acting either as an attorney for the Applicant or in a fiduciary capacity for the benefit of the Applicant customary to the private practice of law in the matter in which the loss arose." Appellants argue that their claims are reimbursable under Rule 1.7 because their relationship with Mr. Gertzman was a fiduciary relationship customary to the practice of law. We disagree. We find the relationship between claimants and Mr. Gertzman was not fiduciary but was merely that of debtor and creditor, and the solicitation of funds for investment is not customary to the practice of law. Thus, appellants' claims were not reimbursable under Rule 1.7.

Appellants argue that a fiduciary relationship was created when they entrusted their funds with Mr. Gertzman with instructions to invest the money in PPC. We disagree. In *Abbitt v. Gregory*, our Supreme Court held:

[A fiduciary] relation may exist under a variety of circumstances; it exists in all cases where there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence. "It not only includes all legal relations, such as attorney and client, broker and principal, executor or administrator and heir, legatee or devisee, . . . trustee and *cestui que trust*, but it extends to any possible case in which a fiduciary relation exists in fact, and in which there is confidence reposed on one side, and resulting domination and influence on the other."

201 N.C. 577, 598, 160 S.E. 896, 906 (1931) (quoting 25 C.J., 1119).

Appellants argue that they reposed a special confidence in Mr. Gertzman who in equity and good conscience was bound to act in good faith and with due regard to the interests of the one reposing confidence. Appellants presented no evidence, however, that they placed a special confidence in Mr. Gertzman or that Mr. Gertzman exercised domination and influence over appellants. The record shows that appellants gave funds to Mr. Gertzman as the purported attorney and promoter for PPC. As signatory on the notes, Mr. Gertzman's only obligation was to repay the amount borrowed with

interest. Thus, the record shows a debtor-creditor relationship between the appellants and Mr. Gertzman. A debtor-creditor relationship does not generally create a fiduciary relationship. *Branch Banking and Trust Co. v. Thompson*, 107 N.C. App. 53, 61, 418 S.E.2d 694, 699, *disc. review denied*, 332 N.C. 482, 421 S.E.2d 350 (1992). *See also, Security National Bank of Greensboro v. Educators Mutual Life Ins. Co.*, 265 N.C. 86, 95, 143 S.E.2d 270, 276 (1965).

Appellants further argue that the alleged fiduciary relationship between Mr. Gertzman and appellants was customary to the practice of law because attorneys handle finances for clients in a variety of circumstances, such as real estate closings and personal injury claims. Appellants cite *Fox v. Wilson*, 85 N.C. App. 292, 354 S.E.2d 737 (1987), for support. We find *Fox* distinguishable.

In *Fox*, plaintiff sued attorneys and their professional corporation for, among other things, constructive fraud in the handling of a transaction in which plaintiff sold a newspaper she owned to a corporation owned by some of the defendants. *Fox*, 85 N.C. App. at 293, 296, 354 S.E.2d at 740. Plaintiff alleged that defendant attorney and another attorney, who was also an officer and employee of defendant professional corporation, undertook to represent her in February, 1985, in reacquiring the assets of a newspaper. Plaintiff alleged a confidential relationship existed between her and defendant attorney. *Id.* at 293, 354 S.E.2d at 738-39. The complaint alleged that the defendants deceived plaintiff about the payment of a promissory note another party had taken out with plaintiff in order to buy the assets of the newspaper. *Id.* at 294-95, 354 S.E.2d at 739. Defendants prevailed upon plaintiff to sign a default letter and to arrange for the transfer of the assets of the newspaper to plaintiff and, shortly thereafter, the sale of the paper to a corporation owned by some of the defendants. *Id.* The *Fox* court concluded that plaintiff had alleged facts sufficient to show a relationship of trust and confidence and that defendants took advantage of that relationship to plaintiff's detriment. *Id.* at 299-300, 354 S.E.2d at 742. Thus the plaintiff in *Fox* had formed an attorney-client relationship with respect to the very subject matter in which the plaintiff's claim was based. In the instant case, no attorney-client relationship or any other fiduciary relationship existed between appellants and Mr. Gertzman in connection with the PPC funds.

In holding that the relationship between appellants and Mr. Gertzman was not customary to the practice of law, we find *Smith v.*

*Travelers Indemnity Company*, 343 F. Supp. 605 (M.D.N.C. 1972), instructive. In *Smith*, plaintiff sued a Virginia attorney and his malpractice insurance company to recover $15,000.00 which he gave to the attorney for investment. *Travelers Indemnity Company*, 343 F. Supp. at 605-06. The attorney executed a six-month demand note for the same amount. After making two interest payments, the attorney failed to make any further payments. *Id.* at 606. Plaintiff sued the malpractice insurance company on the theory that the attorney was engaged in the practice of law when he received plaintiff's money. *Id.* at 608. The court considered whether the professional liability policy, which covered claims resulting from professional services in the insured's capacity as a lawyer, would apply to defendant attorney's solicitation of funds for investment from plaintiff. *Id.* at 608-10. The court cited N.C. Gen. Stat. § 84-2.1, which defines the practice of law in North Carolina as " 'performing any legal service for any other person, firm or corporation, with or without compensation, . . . or assisting by advice, counsel, or otherwise in any such legal work; and to advise or give opinion upon the legal rights of any person, firm or corporation.' " *Id.* at 609 (quoting N.C. Gen. Stat. § 84-2.1). After reviewing cases from other jurisdictions, the court held that the attorney was not acting in any legal capacity when he accepted the $15,000.00 from the plaintiff. *Id.* In so holding, the court emphasized that the attorney sought out plaintiff and suggested that he be allowed to invest plaintiff's money. The court stated: "The transaction itself is one that requires no legal skill or training and indeed, is done every day by thousands of individuals who are without legal training but who are probably better qualified in the investment field than most attorneys." *Id.* at 610.

Appellants also claim they are entitled to a proportional share in the funds under a constructive trust theory because the trust accounts from which Mr. Gertzman drew money to purchase the life insurance contained funds he fraudulently obtained from appellants. We disagree. "A constructive trust does not arise where there is no fiduciary relationship and there is an adequate remedy at law." *Security National Bank of Greensboro v. Educators Mutual Life Insurance Co.*, 265 N.C. at 95, 143 S.E.2d at 276 (citing *Atkinson v. Atkinson*, 225 N.C. 120, 33 S.E.2d 666 (1945)). Since the relationship between appellants and Mr. Gertzman was not a fiduciary one, but one of debtor and creditor, and appellants can sue the estate as creditors, appellants were not entitled to a constructive trust. The claimants failed to introduce evidence tracing their investment funds

into the trust account from which Mr. Gertzman drew funds to invest in the life insurance policies. Thus, even if appellants had established the existence of a fiduciary relationship, appellants were not entitled to a constructive trust because appellants offered no proof to establish their funds were used in part to pay for the life insurance premiums.

Lastly, we consider whether the court erred in denying appellants' petition for declaratory judgment. In order to preserve a question for appellate review, a party must have presented the trial court with a timely request, objection, or motion stating the specific grounds for the ruling sought if the specific grounds were not apparent. N.C.R. App. P. 10(b)(1) (1994). "It is also necessary for the complaining party to obtain a ruling upon the party's request, objection or motion." N.C.R. App. P. 10(b)(1). We do not consider this assignment of error because appellants failed to obtain a ruling from the trial court as required under N.C.R. App. P. 10(b)(1).

The order below is

Affirmed.

Judges ORR and MARTIN concur.