FEDERAL RESERVE BANK OF RICHMOND v. NEUSE MANUFACTURING COMPANY, A CORPORATION; M. G. WALLACE, TRUSTEE, JOHN T. GARRETT, TRUSTEE, AND GURNEY P. HOOD, COMMISSIONER OF BANKS OF THE STATE OF NORTH CAROLINA, IN THE MATTER OF THE LIQUIDATION OF THE RALEIGH BANKING & TRUST COMPANY. (SUE DISHMAN GANT, EXECUTRIX, INTERVENER.)

(Filed 4 May, 1938.)

1. Insurance § 36d—Evidence held insufficient to establish contract by receiver to transfer and assign policy.

Intervener contended, upon supporting evidence, that the receiver of the company that had taken out and paid the premiums on a policy insuring the life of its president, negotiated with insured for the transfer of the policy to insured upon his payment of the asset value of the policy,

that the parties agreed to such transfer upon the approval of the court, and that the receiver agreed to recommend to the court such transfer, that insured died before any order was rendered, and that plaintiff as executrix of insured's estate was entitled to the proceeds of the policy under the contract of assignment. *Held:* Even conceding that the terms for the transfer of the policy were sufficiently definite to constitute a contract, the approval of the court was made a condition precedent, and such approval not having been given, there was no valid and subsisting contract to transfer the policy, and intervener is not entitled to recover the proceeds of the policy from the receiver.

**2. Contracts § 11b—**

A contract is not effective so long as the parties thereto contemplate that anything should be done before contract relations should be established, and the parties may impose any condition precedent to the effectiveness of the agreement.

**3. Receivers § 11—**

Even conceding that a receiver may sell a capital asset of the insolvent without the approval of the court, the receiver may make the approval of the court a valid condition precedent to the effectiveness of a contract to sell a capital asset.

SEAWELL, J., took no part in the consideration or decision of this case.

APPEAL by Sue Dishman Gant, executrix of Kenneth Gant, petitioner, from *Olive, Special Judge,* at November Term (A), 1937, of WAKE. Affirmed.

In the above entitled cause an order was entered by Harris, J., 25 July, 1936, appointing Don P. Johnston receiver for the defendant corporation. On 29 April, 1937, Sue Dishman Gant, executrix of Kenneth Gant, filed a petition in the cause, in which she seeks an order of the court directing the receiver to pay to her the sum of $17,655.22, which represents the net proceeds of a policy of insurance on the life of her testator, in which the defendant Neuse Manufacturing Company was named as beneficiary.

In March, 1919, the Neuse Manufacturing Company applied to the Guardian Life Insurance Company of America for and obtained a policy of life insurance upon the life of Kenneth Gant, who was then, and at all times thereafter until his death, president of said corporation. The Neuse Manufacturing Company was named as beneficiary with the provision in the policy that the beneficiary could not be changed without the consent of the Neuse Manufacturing Company. Said corporation paid all premiums thereon.

On 7 March, 1937, while the receivership was in force, an annual premium in the sum of $701.00 became due, subject to a grace period of thirty days within which to pay the same. The company having borrowed, before the receivership, the sum of $6,740.60 on the policy, interest on said loan in the sum of $337.03 matured on the same date. Under

the participating provisions of the policy a dividend in the sum of $145.50 was due from the company to the beneficiary. On that date the cash or loan value of the policy was $7,738.50. After charging the loan against the cash value there was a net unencumbered cash or loan value of $997.90. After charging the premium and interest maturing on 7 March, 1937, less the dividend, to the cash value of the policy there still remained an unencumbered loan value of $105.37.

Both prior and subsequent to 7 March, 1937, Kenneth Gant and the receiver had discussed a proposal that said policy be assigned to said Kenneth Gant upon the payment of the asset value of the policy. On 15 March, 1937, the receiver having come to the conclusion that it was not advisable for him to undertake to continue to carry said policy, the negotiations were resumed, the asset value of the policy was ascertained as they then understood it, and the receiver agreed that he would assign the policy to Kenneth Gant if, and upon condition that, such transfer was approved by the resident judge. Pursuant thereto, Kenneth Gant wrote a letter to the attorneys for the receiver setting out the facts and stating: "Mr. Don P. Johnston has conferred with me with reference to disposition and my taking over Guardian Life Insurance Policy held by the Neuse Manufacturing Company in the amount of $25,000 on my life. . . .

"I appreciate fully that Mr. Johnston, as receiver, is in no position to carry this insurance and I would much prefer to take the policy over rather than have it lapse or to be transferred to some other purchaser. Mr. Johnston states that it will be necessary for you to draft a court order for this transfer for Judge Harris' approval and signature, all of which I hope meets with your approval."

On 16 March, 1937, counsel for the receiver replied as follows: "I have your letter of the 15th and I think it is the part of wisdom for you to salvage the insurance policy and, of course, Mr. Johnston and I shall be glad to coöperate with you, since it is impracticable for him as receiver to keep the policy in force. Mr. Leach or I will prepare the necessary papers and ask Judge Harris to approve the transfer." Immediately thereafter Kenneth Gant went to a hospital where he was required to undergo an operation, from which he died on the morning of 25 March, 1937. In the meantime, no order had been presented to or approved by the resident judge or any other judge having jurisdiction. While petitioner's testator was critically ill his brother and son tendered $105.37 to the receiver, which tender was refused. After the death of petitioner's testator, the insured, the insurance company paid to the receiver the net sum due in the amount of $17,655.22, which is now held by the receiver subject to the orders of the court.

After a hearing upon the petition, the court below disallowed the petition and denied petitioner's claim and nonsuited and dismissed the petition. The petitioner excepted and appealed.

*Smith, Leach & Anderson and M. G. Wallace for Don P. Johnston, Receiver, and Federal Reserve Bank of Richmond, appellees.*

*Manning & Manning for petitioner, Mrs. Sue Dishman Gant, Executrix of Kenneth Gant, appellant.*

BARNHILL, J.   At the hearing the petitioner offered the letter of her testator to Willis Smith, counsel for the receiver, and the reply thereto; the memorandum showing the estimated net asset value of the policy; evidence of a tender and the following admission contained in the answer of the receiver: "It is admitted that the said Don P. Johnston as receiver, and the said Kenneth Gant conferred with reference to the disposition of the said policy and the taking over of the same by the said Kenneth Gant, and the said Don P. Johnston, as receiver, and Mr. H. H. Harris, as bookkeeper of the Neuse Manufacturing Company, ascertained that the net interest in equity of Neuse Manufacturing Company in said policy after the payment of the premium then due upon the policy was, in so far as they were able to determine, $105.37 as of the end of the grace period, to wit: The 6th or 7th day of April, 1937, as the policy may determine.   The said Don P. Johnston, receiver, says that from time to time, over a period of several months, he and the said Kenneth Gant, deceased, had discussed the taking over of the said policy by the said Kenneth Gant without anything definite being done by either party towards accomplishing the transfer of the policy or the interest therein.   That on 15 March, 1937, there was a conference between the said Kenneth Gant and Don P. Johnston, receiver of the Neuse Manufacturing Company, at which time the proposed taking over of the policy by the said Kenneth Gant and the transfer was discussed."

There was also evidence of statements by the receiver that he had been negotiating with Gant for a transfer of the policy, that the receiver intended to recommend the transfer, and that he regarded that the transfer had not been consummated.   This was all the evidence offered bearing upon the existence of a contract.

Was there a valid and subsisting contract to transfer said policy? Petitioner's rights depend upon the answer to this question which, upon the record, we are compelled to answer in the negative.

The petitioner alleges a contract to convey and assign the policy of insurance in question.   The want of consideration to support the agreement, the indefiniteness of the terms as to who was to be made the new beneficiary and as to when the transfer was to become effective might be mooted to some length.   It is unnecessary, however, for us to discuss these features of the claim for the reason that the defense made by the receiver that such negotiations or agreements as were had or entered into between the petitioner's testator and the receiver did not become effective as a contract for the reason that it was stipulated that the

approval of the resident judge should be first obtained as a condition precedent, is well founded and must be sustained.

That a contract is not made so long as in the contemplation of both parties thereto something remains to be done to establish contract relations is too well established to require the citation of authority. "The parties to a written contract may agree that until the happening of a condition which is not put in writing the contract is to remain inoperative." Anson on Contracts (Am. Ed., 318). To like effect are the decisions in *Insurance Co. v. Morehead,* 209 N. C., 174, and the cases there cited. Speaking to the subject in *Bowser v. Tarry,* 156 N. C., 35, it is said: "It is fully understood that although a written instrument purporting to be a definite contract has been signed and delivered, it may be shown by parol evidence that such delivery was on condition that the same was not to be operative as a contract until the happening of some contingent event, and this on the idea, not that a written contract could be contradicted or varied by parol, but that until the specified event occurred the instrument did not become a binding agreement between the parties."

In negotiating a contract the parties may impose any condition precedent, a performance of which condition is essential before the parties become bound by the agreement. A promise, or the making of a contract, may be conditioned upon the act or will of a third person. 13 C. J., 679. *Wellsville v. Miller,* 243 U. S., 6, 61 L. Ed., 559; *Rollins v. Denver Club,* 18 L. R. A. (N. S.), 733; *Insurance Co. v. Morehead, supra;* 12 Am. Jur., 849.

It is not conceded that the receiver was vested with authority, either under the general law or the order appointing the receiver, to dispose of a capital asset without approval of the court. Even so, in the instant case, the receiver did not undertake to exercise any such authority. He elected to make his agreement subject to and on condition that it was approved by the court. This was a valid condition precedent, even if it is assumed that the receiver had power to convey without such approval. The approval of the court not having been obtained, there is no enforceable contract.

The judgment below is

Affirmed.

SEAWELL, J., took no part in the consideration or decision of this case.