**DAVIS v. WOODLAKE PARTNERS, LLC**

[230 N.C. App. 88 (2013)]

PAUL B. DAVIS AND AGNES GIOCONDA, PLAINTIFFS
v.
WOODLAKE PARTNERS, LLC, DEFENDANT

No. COA13-236

Filed 15 October 2013

1. **Statutes of Limitation and Repose—single agreement executed under seal—contracts—summary judgment**

    The trial court did not err in a breach of contract action by granting summary judgment in favor of plaintiffs even though defendant contended the pertinent statute of limitations had expired. The contractual documents executed by the parties constituted a single agreement executed under seal, and thus, were subject to the ten-year statute of limitations set out in N.C.G.S . § 1-47(2).

2. **Contracts—breach—failure to make deposit—not a condition precedent—summary judgment**

    The trial court did not err in a breach of contract case by granting summary judgment in plaintiffs' favor even though they failed to make a $2,500 deposit. Nothing in the language of the Infrastructure Agreement in any way tended to suggest that plaintiffs had to make the required $2,500 payment before defendant became obligated to obtain the installation of the required facilities.

McGEE, Judge, dissenting.

Appeal by defendant from order entered 24 July 2012 and judgment entered 12 September 2012 by Judge James M. Webb in Moore County Superior Court. Heard in the Court of Appeals 4 June 2013.

*Robbins May & Rich, LLP, by P. Wayne Robbins and Neil T. Oakley, for Plaintiffs-Appellees.*

*Gill & Tobias, LLP, by Douglas R. Gill, for Defendant-Appellant.*

ERVIN, Judge.

Defendant Woodlake Partners, LLC, appeals from an order entered by the trial court granting summary judgment in favor of Plaintiffs Paul B. Davis and Agnes Gioconda with respect to the issue of whether Defendant had breached its contract with Plaintiffs and from a judgment

entered by the trial court sitting without a jury ordering Defendant to pay $191,000 in compensatory damages, plus the costs, to Plaintiffs. On appeal, Defendant argues that the trial court erred by granting summary judgment in favor of Plaintiffs with respect to the issue of liability on the grounds that Plaintiffs' claim was barred by the applicable statute of limitations and because Plaintiffs failed to satisfy a condition precedent set out in the contract between the parties. After careful consideration of Defendant's challenges to the trial court's order and judgment in light of the record and the applicable law, we conclude that the challenged order and judgment should be affirmed.

## I. Factual Background

### A. Substantive Facts

Plaintiffs, who resided in St. Louis, Missouri, purchased a tract of real property located in Moore County from Defendant upon which they planned to build their "Dream Retirement" home. In the first of the three documents executed by the parties in connection with this transaction, which was titled "Vacant Lot Offer to Purchase and Contract," Plaintiffs agreed to buy, and the Defendant agreed to sell, Section 5, Lot 510, in the Woodlake subdivision for a total purchase price of $200,000. According to the Purchase Contract, Defendant was to deliver a general warranty deed to Plaintiffs at the time of closing. In addition, the Purchase Contract stated that:

> 14. OTHER PROVISIONS AND CONDITIONS: (ITEMIZE ALL ADDENDA TO THIS CONTRACT AND ATTACH HERETO). Additional Provisions Addendum and Agreement from Developer with attached addendum amending that letter are attached. Earnest money will be sent within five days of acceptance of offer when the signed hard copies are returned.

At the immediate right of each of the signatures contained in the Purchase Contract, the word "[SEAL]" appears in brackets.

The second document executed by the parties was an agreement in which Defendant obligated itself to provide certain facilities to the property being purchased by Plaintiffs. More specifically, the Infrastructure Agreement provided that, "[i]n consideration of the [Plaintiffs'] . . . obligations set forth below, [Defendant] . . . herewith provide[s] [Plaintiffs] with a commitment to provide infrastructure of roads, water and sewer" "by December 31, 2006." In return for this commitment, the Infrastructure Agreement imposed four obligations on Plaintiffs, one of

which required Plaintiffs, "[a]t closing, [to pay] Twenty Five Hundred and No/Dollars ($2,500.00) for [their] share of the estimated line installation cost," with "[t]hese funds [to] be held in escrow by [Defendant] solely for the purposes of defraying the cost of installation of the sewer lines." The word "seal" does not appear next to the signatures affixed to the Infrastructure Agreement.

The third document, which is entitled "Addendum to Offer to Purchase and Contract Dated September 27, 2004 with Paul B. Davis and Wife, Agnes Gioconda as Buyers and Woodlake Partners, LLC as Sellers for the Property Known as Lot 510 Sec 5 Woodlake," altered some of the obligations imposed upon Plaintiffs by the Infrastructure Agreement. Once again, the word "seal" does not appear at any point on the Addendum.

The three documents in which the parties' obligations to each other were embodied were not executed simultaneously. Instead, Defendant signed the Infrastructure Agreement on 23 September 2004; Plaintiffs signed the Purchase Contract, the Infrastructure Agreement, and the Addendum on 28 September 2004; and Defendant signed both the Purchase Contract and the Addendum on 4 October 2004. The purchase "closed" on or about 25 October 2004.

Although Plaintiffs were, as required in the relevant contractual provision, ready to build a residence on the property in 2011, they determined at that time that the roads leading to their property had not been paved and the sewer facilities had not been installed. On the other hand, Plaintiffs were told that the water lines required by the Infrastructure Agreement had been provided. According to Defendant, an unpaved road provided access to Plaintiffs' property. In addition, Defendant asserted that several residences had been built in the relevant section of the Woodlake development despite the absence of a paved road. Similarly, despite the fact that plans had been made to install sewer lines to Plaintiffs' property, Defendant asserted that the installation of those facilities had been delayed due to limited interest on the part of other property owners and the collapse of the real estate market. Although Defendant indicated that other purchasers in the Woodlake development had installed used septic systems, the condition of the soil on Plaintiffs' lot precluded the use of such a system. Finally, even though Plaintiffs acknowledged that the $2,500 payment required in the Infrastructure Agreement had never been made, Defendant did not mention the payment of this fee at closing and had not sought to have this fee paid at any time thereafter. Moreover, many of the property owners who had made the required $2,500 payment had received a refund from Defendant.

**DAVIS v. WOODLAKE PARTNERS, LLC**

[230 N.C. App. 88 (2013)]

### B. Procedural History

On 28 September 2011,[1] Plaintiffs filed a verified complaint asserting that Defendant had breached the contract between the parties by failing to provide the required infrastructure and seeking either an order of specific performance or an award of damages. On 2 December 2011, Defendant filed an answer in which it responded to the material allegations of Plaintiffs' complaint and asserted that Plaintiffs' claims were barred by the applicable statute of limitations and by Plaintiffs' failure to make the $2,500 payment required by the Infrastructure Agreement.

On 6 June 2012, Plaintiffs filed a motion seeking the entry of summary judgment in their favor. On 24 July 2012, the trial court entered an order denying a motion for summary judgment filed by Defendant,[2] denying Plaintiffs' summary judgment motion with respect to their specific performance claim, allowing Plaintiffs' summary judgment motion with respect to their damages claim, and ordering that an evidentiary hearing be convened for the purpose of determining the amount of damages which should be awarded to Plaintiffs for Defendant's breach of contract. After holding the evidentiary hearing contemplated by the 24 July 2012 order, the trial court entered a judgment awarding Plaintiffs $191,000 in compensatory damages, plus the costs, on 12 September 2012. Defendant noted an appeal to this Court from the 24 July 2012 order and the 12 September 2012 judgment.[3]

### II. Substantive Legal Analysis

In its brief, Defendant argues that the trial court erred by granting summary judgment in favor of Plaintiffs on the grounds that Plaintiffs' underlying breach of contract claim was barred by the applicable statute of limitations and on the grounds that Plaintiffs' failure to make the $2,500 deposit constituted a failure to comply with a condition precedent to the effectiveness of any obligation which Defendant might otherwise have had to construct the facilities in question. We do not find either of these arguments persuasive.

---

1. Plaintiffs' complaint was filed approximately four years and ten months after the date by which the facilities required by the Infrastructure Agreement were supposed to have been installed.

2. As a result of the fact that Defendant's summary judgment motion does not appear in the record on appeal, we do not know the date upon which that motion was filed.

3. As a result of the fact that both of the arguments advanced in Defendant's brief rest upon challenges to the 24 July 2012 order, Defendant has abandoned any separate challenge which it might have otherwise made to the 12 September 2012 judgment. N.C.R. App. P. 28(b)(6).

DAVIS v. WOODLAKE PARTNERS, LLC

[230 N.C. App. 88 (2013)]

### A. Standard of Review

An evaluation of the correctness of a trial court's decision to grant a summary judgment motion requires a determination of "(1) whether there is a genuine issue of material fact and (2) whether the movant is entitled to judgment as a matter of law." *NationsBank of N.C. v. Parker*, 140 N.C. App. 106, 109, 535 S.E.2d 597, 599 (2000) (citations omitted). A decision to enter summary judgment in favor of a particular party is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c). We review trial court orders granting or denying a summary judgment motion utilizing a *de novo* standard of review. *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008).

### B. Validity of Defendant's Challenges to the Trial Court's Order

### 1. Statute of Limitations

[1] In its initial challenge to the trial court's summary judgment order, Defendant contends that Plaintiffs' breach of contract claim was barred by the applicable statute of limitations. The extent to which a particular claim is barred by the applicable statute of limitations "is a mixed question of law and fact, [with] the plaintiff having the burden of proving that his action was brought within the time allowed by the applicable statute, but having the right to offer such proof." *Ports Authority v. Roofing Co.*, 294 N.C. 73, 80, 240 S.E.2d 345, 349 (1978) (citations omitted). In seeking to persuade us that Plaintiffs' breach of contract claim was time-barred, Defendant relies upon "the three-year limitation period" set out in N.C. Gen. Stat. § 1-52(1). In response, Plaintiffs argue that "[t]he correct statute of limitations in the instant case is N.C. Gen. Stat. § 1-50[(a)(5)]."[4] Although neither party argued that the agreement between the parties constituted a sealed instrument, we conclude that the trial court correctly declined to enter summary judgment in favor of Defendant on statute of limitations grounds given that the contractual documents

---

4. N.C. Gen. Stat. § 1-50 is actually a statute of repose rather than a statute of limitations. According to well-established North Carolina law, statutes of repose, such as N.C. Gen. Stat. § 1-50(a)(5), do "not serve to extend the time for bringing an action otherwise barred by the three year statute" set out in N.C. Gen. Stat. § 1-52(1). *Bolick v. American Barmag Corp.*, 306 N.C. 364, 368, 293 S.E.2d 415, 418 (1982). As a result, in the event that N.C. Gen. Stat. § 1-50(a)(5) has any application to this case, Plaintiffs' complaint must have been filed within the time limits specified by both N.C. Gen. Stat. § 1-50(a)(5) and the applicable statutes of limitations.

executed by the parties constitute a single agreement executed under seal subject to the ten-year statute of limitations set out in N.C. Gen. Stat. § 1-47(2).

### a. N.C. Gen. Stat. § 1-50(5) and N.C. Gen. Stat. § 1-52(1)

According to N.C. Gen. Stat. § 1-52(1), "an action upon a contract, . . . express or implied, except those mentioned in the preceding sections or in [N.C. Gen. Stat.] § 1-53(1)," must be brought "within three years." N.C. Gen. Stat. 1-50(a)(5), one of the "preceding sections" referenced in N.C. Gen. Stat. § 1-52, provides an outside limit of six years within which an action subject to that provision must be brought. *Whittaker v. Todd,* 176 N.C. App. 185, 187, 625 S.E.2d 860, 861, *disc. review denied,* 360 N.C. 545, 635 S.E.2d 62 (2006). N.C. Gen. Stat. § 1-50(a)(5)a provides that:

> No action to recover damages based upon or arising out of the defective or unsafe condition of an improvement to real property shall be brought more than six years from the later of the specific last act or omission of the defendant giving rise to the cause of action or substantial completion of the improvement.

The statutorily defined category of actions "arising out of the defective or unsafe condition of an improvement to real property" includes "[a]ctions to recover damages for breach of a contract to construct or repair an improvement to real property." N.C. Gen. Stat. § 1-50(a)(5)b.1. As a result of the fact that the present case arises from Defendant's failure to construct certain improvements to real property and the fact that Plaintiffs' complaint was filed within six years of the date upon which the facilities specified in the Infrastructure Agreement were supposed to have been constructed, Plaintiffs' claim is not barred by the six-year statute of repose set out in N.C. Gen. Stat. § 1-50(a)(5).

In light of our determination that Plaintiffs' breach of contract claim is not barred by the six-year statute of repose set out in N.C. Gen. Stat. § 1-50(a)(5), we must next address Defendant's contention that Plaintiffs' claim is barred by the three-year statute of limitations set out in N.C. Gen. Stat. § 1-52(1). The first step in that process is determining the date upon which Plaintiffs' claim accrued.

> For purposes of the three-year limitation prescribed by [N.C. Gen. Stat. §] 1-52, a cause of action based upon or arising out of the defective or unsafe condition of an improvement to real property shall not accrue until the

injury, loss, defect or damage becomes apparent or ought reasonably to have become apparent to the claimant.

N.C. Gen. Stat. § 1-50(a)(5)f. As a result, the extent to which Plaintiffs' claim was barred by the three-year statute of limitations set out in N.C. Gen. Stat. § 1-52(a) "requires a determination of when the alleged defect or damage became apparent, or ought reasonably to have become apparent[,] to plaintiffs." *Everts v. Parkinson*, 147 N.C. App. 315, 320, 555 S.E.2d 667, 671 (2001).

According to Defendant, Plaintiffs' claim accrued on 31 December 2006. Defendant reached this conclusion based on the fact that 31 December 2006 was the date specified in the Infrastructure Agreement by which the relevant facilities were due to be completed. In the event that we were to accept Defendant's contention concerning the date upon which Plaintiffs' claim accrued, their claim would be barred by the three-year statute of limitations set out in N.C. Gen. Stat. § 1-52(3). The record in the present case is, however, essentially silent concerning the date upon which Defendant's failure to procure the construction of the facilities in question became, or reasonably should have become, apparent, to Plaintiffs. In their complaint, and in a subsequent affidavit, Plaintiffs stated that, after closing on the property in October 2004, they visited the property in 2011, at which point they "determined" that the infrastructure promised in the Infrastructure Agreement had not been constructed. After alleging that it lacked sufficient information to admit or deny this allegation in its answer, Defendant failed to advance any argument or adduce any contrary evidence concerning the date upon which Plaintiffs knew, or reasonably should have learned, that the facilities specified in the Infrastructure Agreement had not been constructed. Instead, Defendant has simply asserted that Plaintiffs' claim accrued on the date by which Defendant was supposed to have completed the required facilities. Although Plaintiffs' evidentiary forecast concerning the date upon which they learned that the facilities in question had not been constructed might suffice to raise a genuine issue of material fact concerning the date upon which Plaintiffs' breach of contract claim accrued for purposes of the three-year statute set out in N.C. Gen. Stat. § 1-52(1), we need not resolve that issue given our determination that Plaintiffs' claim constitutes an action on a sealed instrument subject to the ten-year statute of limitations set out in N.C. Gen. Stat. § 1-47(2) and is not, for that reason, barred by the applicable statute of limitations.

### b. N.C. Gen. Stat. § 1-47(2)

According to N.C. Gen. Stat. § 1-47(2), which is one of the "preceding sections" mentioned in N.C. Gen. Stat. § 1-52(1), an action "upon

**DAVIS v. WOODLAKE PARTNERS, LLC**

[230 N.C. App. 88 (2013)]

a sealed instrument" must be brought within ten years. The extent to which a particular contract constitutes a sealed instrument is, generally speaking, a question of law for the court. *Square D Co. v. C. J. Kern Contractors, Inc.*, 314 N.C. 423, 426, 334 S.E.2d 63, 65 (1985). "[I]f it appears without ambiguity on the face of the contract that a party signed under seal, it is held as a matter of law that the contract is under seal." *Central Systems, Inc. v. General Heating & Air Conditioning Co.*, 48 N.C. App. 198, 201-02, 268 S.E.2d 822, 824, *cert. denied*, 301 N.C. 400, 273 S.E.2d 445 (1980). As a result, in the event that the bracketed word "seal" appears on a contractual document adjacent to each of the parties' signatures, the instrument in question has been executed under seal. *Biggers v. Evangelist*, 71 N.C. App. 35, 39, 321 S.E.2d 524, 527 (1984) (citations omitted), *disc. review denied*, 313 N.C. 327, 329 S.E.2d 384 (1985).

As we have already noted, the Purchase Agreement provided, among other things, that:

> 14. OTHER PROVISIONS AND CONDITIONS: (ITEMIZE ALL ADDENDA TO THIS CONTRACT AND ATTACH HERETO). Additional Provisions Addendum and Agreement from Developer with attached addendum amending that letter are attached. Earnest money will be sent within five days of acceptance of offer when the signed hard copies are returned.

In view of the fact that the word "[SEAL]" appears adjacent to each of the signatures affixed to the Purchase Contract, we have no difficulty in concluding that the Purchase Contract was executed under seal. In addition, we conclude that the only reasonable understanding of the reference to "other provisions and conditions" contained in Section 14 of the Purchase Contract is as a reference to the Infrastructure Agreement and the Addendum.

In "interpreting a contract the intent of the parties is our polar star . . . ," *Bicycle Transit Authority, Inc. v. Bell*, 314 N.C. 219, 227, 333 S.E.2d 299, 304 (1985), with the parties' intentions to be ascertained from "the expressions used, the subject matter, the end in view, the purpose sought, and the situation of the parties at the time." *McDowell Motor Co. v. N.Y. Underwriters Ins. Co.*, 233 N.C. 251, 254, 63 S.E.2d 538, 540 (1951) (citations omitted). A careful examination of the relevant contractual documents indicates that the Purchase Agreement, the Infrastructure Agreement, and the Addendum were each understood by the parties as part of a single overall agreement. For example, in the

Purchase Contract, the parties expressly stated that the Infrastructure Agreement and the Addendum were attached and should be understood as addenda to the Purchase Contract. Similarly, the Addendum, which amends several provisions contained in the Infrastructure Agreement, is titled, in pertinent part, "Addendum to [Purchase Contract] . . . with [Plaintiffs][.]" Although Defendant denied that the three documents constituted a single contract during the discovery process, it has never suggested any manner in which the relevant language can be interpreted other than the one outlined in this paragraph, and none occurs to us. As a result, given this clear and unambiguous contractual language, we hold that, as a matter of law, the parties intended that the Purchase Contract, the Infrastructure Agreement, and the Addendum form a single agreement and that, given the presence of a seal on the Purchase Contract, the entire agreement constitutes an instrument executed under seal, rendering the present action subject to the ten-year statute of limitations set out in N.C. Gen. Stat. § 1-47(2).

Although our dissenting colleague does not explicitly disagree with our determination that the language of the relevant documents establishes that the parties entered into a single contract, rather than multiple contracts, she concludes that the trial court's summary judgment order and judgment should be reversed and that this case should be remanded to the trial court for further proceedings on the grounds that the record reveals the existence of a genuine issue of material fact concerning the extent, if any, to which the parties intended that the Infrastructure Agreement and the Addendum should be treated as sealed instruments. In concluding that such a factual issue exists, our dissenting colleague relies upon decisions such as *Security National Bank v. Educators Mut. Life Ins. Co.*, 265 N.C. 86, 96, 143 S.E.2d 270, 277 (1965) (holding that the record revealed the existence of a factual issue concerning whether the instrument in question had been executed under seal given that the particular contract in question bore three signatures, only one of which was affixed adjacent to the word "(Seal)"); *Pickens v. Rymer*, 90 N.C. 282, 283-84 (1884), and *Yarborough v. Monday*, 14 N.C. 420, 420-21 (1832) (both of which hold that, in a situation in which an instrument contained two signatures and only one seal, the extent to which the instrument in question had been executed under seal was a question of fact).[5] We do not believe that the decisions upon which our dissenting colleague relies

---

5. Although our dissenting colleague does not explicitly cite *Security National Bank, Pickens,* or *Yarborough* in her separate opinion, she does reference them indirectly given that they constitute the "three cases" cited in *Mobil Oil Corp. v. Wolfe*, 297 N.C. 36, 38-39, 252 S.E.2d 809, 810-11 (1979), upon which she does rely.

provide any assistance in properly resolving the present issue given that each of them addresses a situation in which the extent to which a particular party had actually adopted a seal at all is subject to reasonable dispute. The present case involves a very different issue, which is the extent, if any, to which attachments or addenda that have effectively been incorporated into an instrument clearly executed under seal should be treated as non-sealed solely because they are not separately sealed. After careful review of the relevant authorities, we have been unable to identify any decisions, and none have been cited by our dissenting colleague, holding that, although a principal contract has clearly been executed under seal, each attachment or addenda incorporated into that contract must also bear a seal in order for the ten-year statute of limitations set out in N.C. Gen. Stat. § 1-47(2) to apply to claims arising from language contained in those attachments or addenda.

The decisions that do touch upon similar issues suggest, without directly holding, that the approach that we have adopted, rather than the approach suggested by our dissenting colleague, is the correct one. For example, in *Mobil Oil Corp.*, 297 N.C. at 38-39, 252 S.E.2d at 810-11 (1979), the Supreme Court distinguished cases in which there was conflicting evidence concerning whether all of the parties to a particular contract had adopted a seal from those in which no such issue arose and held that the defendants were precluded from "introduc[ing] parol testimony that they did not intend to adopt the seals on the instruments." In reaching this conclusion, the Supreme Court stated that:

> Defendants argue vigorously that they should be allowed to testify that they did not intend to adopt the printed seals[.] . . . This was a commercial transaction. Defendants have made no claim of misrepresentation, overreaching or undue influence. Thus even if they did not understand all the terms in the instrument, they are bound by those which are unambiguous.

*Id.* at 39, 252 S.E.2d at 811 (citing *Fidelity & Casualty Co. of N.Y. v. Nello L. Teer Co.*, 250 N.C. 547, 550-51, 109 S.E.2d 171, 173 (1959), and *Howland v. Stitzer*, 240 N.C. 689, 696, 84 S.E.2d 167, 172 (1954)). Similarly, in *Bank of North Carolina, N.A. v. Cranfill*, 297 N.C. 43, 44, 253 S.E.2d 1, 1 (1979), the Court stated that:

> Defendants contend that they did not intend to adopt the printed seals as their own. It follows, according to their argument, that the instruments were not under seal; that the 10-year statute of limitations of [N.C. Gen. Stat §]

1-47(2) is not applicable; and that the 3-year statute of limitations of [N.C. Gen. Stat. §] 1-52 had run. The trial court entered summary judgment in favor of plaintiff. The Court of Appeals reversed, finding that there was a genuine issue of material fact as to whether defendants adopted the printed seal. In so doing, it relied primarily on *Bank v. Insurance Co.*, 265 N.C. 86, 143 S.E. 2d 270 (1965). For the reasons stated in *Oil Corporation v. Wolfe, supra,* this reliance was misplaced.

As a result, these decisions clearly hold that oral testimony to the effect that a particular litigant did not intend to adopt a seal is inadmissible in the event that the sealed nature of the contract is apparent from the face of the parties' agreement. In light of our holding, with which our dissenting colleague does not explicitly disagree, that the three documents at issue here constitute components of a single contract, we are unable to discern any basis on which to reconcile the decisions discussed in this paragraph, which clearly preclude the admission of evidence concerning the extent to which a party "intended" to adopt a seal which appears on a written instrument in situations in which the sealed nature of the relevant instrument is clear, with the position adopted by our dissenting colleague, which would appear to allow a party to introduce evidence to the effect that, despite having clearly executed the principal contractual document under seal, it did not intend for attachments or addenda which have effectively been incorporated into that explicitly sealed instrument to be treated as sealed instruments.

Moreover, in light of the language used in both the relevant statutory provisions setting out the limitations periods applicable in contract actions and in cases such as *Central Systems*, all of which treat a contract as a singular rather than a multi-part entity, we believe that the General Assembly intended that the ten-year statute of limitations applicable to sealed instruments applies equally to all "provisions and conditions" of the overall contract, regardless of whether the signatures affixed to those additional "provisions and conditions" make any reference to the use of a seal. In the event that we were to adopt the approach suggested by our dissenting colleague, different statutes of limitation would apply to claims arising under different provisions of the same contract, a result that lacks support in the reported decisions in this jurisdiction and that would lead to considerable and undesirable uncertainty in the enforcement of contractual provisions.[6] As a result, given that the

6. Our dissenting colleague argues that the Supreme Court recognized the possibility that different statutes of limitation would apply to different parties to the same contract in

principal basis for our dissenting colleague's conclusion that the record reflects the existence of a genuine issue of material fact concerning the extent to which the parties intended that the Infrastructure Agreement and the Addendum be treated as sealed instruments[7] stems from the fact that these documents lack a separate reference to a seal and given our belief that this fact, standing alone, does not in any way create any issue of fact concerning the extent to which the Infrastructure Agreement and the Addendum are or are not instruments executed under seal for purposes of the statute of limitations set out in N.C. Gen. Stat. § 1-47(2), we conclude that the trial court, albeit for a reason not addressed by the parties, correctly concluded that Plaintiffs' claim against Defendant was not barred by the applicable statute of limitations.[8]

---

*Security National Bank.* Although the decision in question does recognize the possibility that one signatory to a particular contract may have intended to execute the agreement in question under seal while another did not, we understand the Supreme Court to have held in *Security National Bank* that the effect of a determination that less than all of the signatories to the contract had adopted a seal would be to simply preclude a determination that the contract in question had been executed under seal rather than to necessitate a determination that the relevant contract was a sealed instrument as to one party and not to another. As a result, we are unable to read *Security National Bank* in the same manner as our dissenting colleague.

7. In her separate opinion, our dissenting colleague treats the fact that the various components of the overall agreement between the parties were executed on different dates as equivalent to the situation addressed in *Security National Bank, Pickens,* and *Yarborough* and suggests that the adoption of the position which we have deemed appropriate would effectively allow a party to place a seal on subsequently executed documents, thereby retroactively converting an originally unsealed instrument into an agreement executed under seal. The fact that the various documents that make up the overall contract between the parties in this case were executed at different times does not, in our opinion, undercut the validity of the position adopted in the text of this opinion given that those documents were executed at approximately the same time and, when read in context, clearly constitute a single agreement. The situation at issue here is very different from those about which our dissenting colleague expresses concern given that such situations do not involve multiple documents entered into in a roughly contemporaneous manner and which form part of a single agreement. As a result, we do not believe that the fact that the Purchase Contract, the Infrastructure Agreement, and the Addendum were not executed simultaneously has any tendency to indicate that the Infrastructure Agreement and Addendum should not be treated as parts of an instrument executed under seal for purposes of this case.

8. Admittedly, neither party has argued that the ten-year statute of limitations set out in N.C. Gen. Stat. § 1-47(2) applies in the present case and the record does not contain any indication that the trial court relied upon N.C. Gen. Stat. § 1-47(2) in denying Defendant's summary judgment motion. However, "[i]f the correct result has been reached [in the trial court], the judgment will not be disturbed even though the trial court may not have assigned the correct reason for the judgment entered." *Shore v. Brown,* 324 N.C. 427, 428, 378 S.E.2d 778, 779 (1989).

## 2. Condition Precedent

**[2]** In its second challenge to the trial court's order, Defendant argues that the trial court erred by granting summary judgment in Plaintiffs' favor on the grounds that the $2,500 deposit required by the Infrastructure Agreement, which Plaintiffs never paid, constituted a condition precedent which had to be satisfied before Defendant had any obligation to construct the relevant facilities. We do not find this argument persuasive.

In the process of negotiating and entering into a contract, parties "may impose any condition precedent, a performance of which condition is essential before the parties become bound by the agreement." *Federal Reserve Bank v. Manufacturing Co.*, 213 N.C. 489, 493, 196 S.E. 848, 850 (1938).

> Whether covenants are dependent or independent . . . depends entirely upon the intention of the parties shown by the entire contract as construed in the light of the circumstances of the case, the nature of the contract, the relation of the parties thereto, and other evidence which is admissible to aid the court in determining the intention of the parties.

*Wade v. Lutterloh*, 196 N.C. 116, 120, 144 S.E. 694, 696 (1928) (citing Page on the Law of Contracts, Vol. 5, 2nd Ed., s. 2948). As a result of the fact that such provisions are disfavored, a contractual provision will be construed as a condition precedent only "where the clear and plain language of the agreement dictates such construction." *Handy Sanitary Dist. v. Badin Shores Resort Owners Ass'n, Inc.*, __ N.C. App. __, __, 737 S.E.2d 795, 801 (2013) (citing *Stewart v. Maranville*, 58 N.C. App. 205, 206, 292 S.E.2d 781, 782 (1982) (citation omitted)). "The weight of authority is to the effect that the use of such words as 'when,' 'after,' 'as soon as,' and the like, gives clear indication that a promise is not to be performed except upon the happening of a stated event." *In re Foreclosure of Goforth Properties, Inc.*, 334 N.C. 369, 376, 432 S.E.2d 855, 859 (1993) (quoting *Jones v. Realty Co.*, 226 N.C. 303, 306, 37 S.E.2d 906, 908 (1946)).

A careful examination of the relevant contractual language demonstrates that the making of the $2,500 deposit was not a condition precedent to the effectiveness of Defendant's obligation to construct the necessary facilities. After clearly stating that Defendant would provide certain road, sewer, and water facilities, the Infrastructure Agreement provided that Plaintiffs "will also pay" $2,500 into escrow, an amount which was intended to assist in covering the cost of installing the

required infrastructure. Nothing in the language of the Infrastructure Agreement in any way tends to suggest that Plaintiffs had to make the required $2,500 payment before Defendant became obligated to obtain the installation of the required facilities. Instead, we believe that the two obligations were independent and could each be enforced separately. As a result, given that the trial court correctly concluded that the record did not reveal the existence of any genuine issue of material fact with respect to this issue and that Plaintiffs were entitled to judgment with respect to this issue as a matter of law, Defendant is not entitled to relief from the trial court's judgment on the basis of this contention.

### III. Conclusion

Thus, for the reasons set forth above, neither of Defendant's challenges to the trial court's judgment have merit. As a result, the trial court's summary judgment order and the subsequent judgment should be, and hereby are, affirmed.

AFFIRMED.

Judges STEELMAN concurs.

McGEE, Judge, dissenting.

I respectfully dissent from the majority's holding that, as a matter of law, the parties intended the Infrastructure Agreement and the Addendum to have been executed under seal by virtue of listing them as addenda to the Purchase Contract, a sealed instrument. I would find that the trial court's grant of summary judgment was improper, and remand the case for the trier of fact to determine the intent of the parties.

Plaintiffs signed all three documents, the Purchase Contract, the Infrastructure Agreement, and the Addendum, on 28 September 2004. Defendant signed the Infrastructure Agreement, which was not under seal, on 23 September 2004. Eleven days later, on 4 October 2004, Defendant signed the Purchase Contract, which was under seal, and the Addendum, which was not.

Our Supreme Court has held that when the word "seal" in an agreement appears beside one signatory, but not all, a question of intent arises. *See generally, Oil Corp v. Wolfe*, 297 N.C. 36, 38-39, 252 S.E.2d 809, 810-11 (1979) (discussing three cases in which there were "special circumstances" transforming whether or not a party adopted a seal into a jury question). I would contend that the question of intent similarly arises

when separate agreements, signed on different days, and not all under seal, are incorporated into a single contract. Clearly, Defendant did not sign the Infrastructure Agreement under seal. The majority holds that Defendant, through the language included in the Purchase Agreement stating that "Additional Provisions Addendum and Agreement from Developer with attached addendum amending that letter are attached," intended for its signature on the Infrastructure Agreement to be converted to "under seal" on 4 October 2004 – the date it signed the Purchase Agreement. I disagree, and do not believe this question should be answered as a matter of law.

My concern with the majority approach is that documents not executed under seal will be deemed to have been executed under seal, through incorporation, even though they were signed weeks, months, or even years, before or after the incorporating document. On the facts before us, what if the Infrastructure Agreement had been signed under seal, but neither the Purchase Agreement nor the Addendum had been? I do not believe we should, as a matter of law, allow an addendum to a contract to convert that contract to one "under seal" without reasonable certainty that such was the intent of the parties. Absent some mechanism to inquire into intent, a "plaintiff" could revive a contract action otherwise defeated by the three-year statute of limitations by convincing the "defendant" to sign some minor addendum to that contract including the word "seal" next to the "defendant's" signature. It is true that the case before us is not that case, but the majority's holding allows for this outcome, so long as the addendum is considered part of the underlying contract – which it, by definition, would be. I find this rigid and potentially unfair outcome more troublesome than the potential that, on occasion, different statutes of limitations might apply to different provisions in a contract. Case law already permits different statutes of limitations to apply to different signatories of a single contract. *See Bank v. Insurance Co.*, 265 N.C. 86, 143 S.E.2d 270 (1965). When there are, for instance, three signatories to an agreement, but only one seal, "[w]hether the defendant[s] adopted the seal is a question for the jury." *Oil Corp.*, 297 N.C. at 38, 252 S.E.2d at 810. If the jury determines that one defendant adopted the seal but two did not, the clear implication is that the ten-year statute of limitations will apply to one defendant, but not to the other two.

My dissent does not address the strength or weakness of Defendant's argument that it did not intend for the Infrastructure Agreement to be under seal, as I believe that is a question for the trier of fact. I dissent because, in my opinion, the question of whether one document under

seal transforms another document not under seal into one that is under seal, constitutes a special circumstance more appropriately decided by the trier of fact. *See Oil Corp.*, 297 N.C. at 38-39, 252 S.E.2d at 810-11 (discussing three cases in which there were "special circumstances" transforming whether or not a party adopted a seal into a jury question).